Daniel C. CLARK, Appellant

v.

COMMONWEALTH of Kentucky,
Appellee.

No. 2005–SC–000177–DG.

Supreme Court of Kentucky.

May 24, 2007.

David A. Lambertus, Louisville, KY, Counsel for Appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Susan Roncarti Lenz, Assistant Attorney General, Office of the Attorney General, Criminal Appellate Division, Frankfort, KY, Counsel for Appellee.

Opinion of the Court by Justice MINTON.

## I. INTRODUCTION.

A jury convicted Daniel Clark of two counts of sexual abuse in the first degree for which he was sentenced to a total of ten years' imprisonment. A divided panel of the Court of Appeals affirmed Clark's convictions, and we granted discretionary review.

Clark contends that the trial court erred (1) by refusing to instruct the jury on sexual abuse in the second degree, (2) by permitting the Commonwealth to present testimony to the jury of Clark's prior sexual misconduct involving another victim, and (3) by refusing to permit him to play for the jury a social worker's videotaped interviews of the alleged victims. We find merit in Clark's first two arguments, and we reverse on those issues. Of necessity, we find no error in Clark's third contention because the videotapes are not in the record for us to review.

## II. FACTUAL AND PROCEDURAL HISTORY.

Clark's indictment charged him with committing two counts of first-degree sexual abuse—one count as to E.H. and one count as to L.H.—of children less than twelve years of age and two counts of first-degree sodomy—one count as to E.H. and one count as to L.H.—of children less than twelve years of age between 1998 and May 2002.[1] The charges proceeded to trial. During jury selection, the trial court granted the Commonwealth's motion to dismiss the charge of sodomy of L.H. During trial, the trial court allowed the Commonwealth to amend the indictment to accuse Clark of committing the offenses between 1999 and May 2002, rather than between 1998 and 2002.

L.H. and E.H. testified that Clark, who was a family friend, repeatedly and over a course of years reached his hands into their pants and fondled their penises. Generally, each testified that such contact occurred when he was alone with Clark, either in the child's home or in Clark's vehicle. L.H. testified that Clark once fondled his penis while he, Clark, L.H.'s grandmother, and E.H. were watching television together. And E.H. testified that Clark placed his mouth on his penis on at least one occasion, but L.H. did not testify to any oral sexual contact with Clark. Both E.H. and L.H. testified that Clark did not request that either of them touch him in a sexual manner.

The Commonwealth was also permitted to call M.M. as a witness.[2] M.M., who was thirty-three years of age at the time of trial, testified that Clark, in his former role as a Roman Catholic priest, counseled M.M. when he was in the sixth grade.

---

1. The indictment refers to the alleged victims as A.B. and C.D. At trial, the Commonwealth clarified that A.B. referred to E.H. and C.D. referred to L.H. Clark has not alleged that referring to the victims in the indictment by those pseudonyms caused him to suffer any prejudice.

2. Due to a problem with the court reporter's recording device at trial, the record does not contain a verbatim transcript of M.M.'s testimony. The parties have presented M.M.'s testimony in the form of a narrative statement.

According to M.M., during counseling sessions, which usually occurred during and after school when only Clark and M.M. were present, Clark repeatedly placed his hands down M.M.'s pants and fondled M.M.'s penis. M.M. testified that Clark repeatedly placed his mouth on M.M.'s penis. M.M. also testified that Clark never asked M.M. to touch Clark in a sexual manner. Several years later, Clark pleaded guilty to a criminal offense based on his sexual misconduct toward M.M.

The jury found Clark guilty of sexual abuse in the first degree against both L.H. and E.H. but found Clark not guilty of the sodomy charge against E.H. Consistent with the jury's recommendation, the trial court sentenced Clark to five years' imprisonment on each sexual abuse charge, to be served consecutively, for a total of ten years' imprisonment. The trial court denied Clark's motion for a new trial, and his appeal to the Court of Appeals was unavailing. We then granted discretionary review.

## III. ANALYSIS.

### A. Refusal to Instruct on Sexual Abuse in the Second–Degree Was Improper.

■ After oral amendment of the indictment during trial, Clark was charged with committing the first-degree sexual abuse of both L.H. and E.H. between 1999 and May 2002. Clark argues that based on these charges, he was entitled to an additional jury instruction on second-degree sexual abuse as to L.H. because L.H. turned twelve in November 2001, approximately seven months before May 2002, when the time period alleged in the indictment expired. Since the line dividing the offense of first-degree sexual abuse from second-degree sexual abuse is whether the victim is under twelve years old,[3] we agree with Clark.

■ A court is required to instruct a jury on all offenses that are supported by the evidence.[4] L.H. understandably could not pinpoint the date(s) when Clark abused him.[5] So the indictment covered the broad time period from when L.H. moved to Bullitt County in September 1999 until May 2002, which L.H.'s mother testified was the last time the family had contact with Clark. The obvious problem with the time frame included in the indictment is that it includes several months when L.H. was twelve, even though the charged crime can only be committed against a child who is less than twelve.

The Commonwealth conceded at oral argument that it erred by not seeking to amend the indictment to limit the charge to that period of time before L.H. turned

3. *See* Kentucky Revised Statutes (KRS) 510.110(1); KRS 510.120(1); *Tungate v. Commonwealth,* 901 S.W.2d 41, 44 (Ky.1995) ("The lesser offense [*i.e.,* sexual abuse in the second degree] proscribes sexual contact with a person less than fourteen years old, while first-degree sexual abuse, a Class D felony, prohibits the same conduct with a person less than twelve years of age.") The other methods of committing sexual abuse in the first degree, or second degree, set forth in the statutes are inapplicable to the facts at hand.

4. *Taylor v. Commonwealth,* 995 S.W.2d 355, 360 (Ky.1999) ("In a criminal case, it is the duty of the trial judge to prepare and give instructions on the whole law of the case, and this rule requires instructions applicable to every state of the case deducible or supported to any extent by the testimony.").

5. Then–Judge Schroder astutely pointed out in a similar case involving sexual abuse of a victim less than twelve years of age that "[i]t would be wholly unreasonable to expect a child of such tender years to remember specific dates, especially given the long time period over which the abuse occurred." *Farler v. Commonwealth,* 880 S.W.2d 882, 886 (Ky. App.1994).

twelve. The Commonwealth's inexplicable failure to do so led to a situation in which the victim was unable to testify conclusively about when the abuse occurred, leaving the jury to speculate as to whether the abuse described by L.H. happened before L.H. turned twelve, after he turned twelve, or both. This problem is magnified by the fact that L.H. testified to having been repeatedly abused by Clark, yet the indictment charged Clark with a single count of abuse of L.H. Thus, if the jury believed beyond a reasonable doubt that Clark sexually abused L.H., it was forced to speculate both as to which instance of abuse was covered by the indictment and as to whether that particular act of abuse occurred before or after L.H.'s twelfth birthday.

A lesser-included offense is an offense that includes the same or fewer elements than the primary offense.[6] And second-degree sexual abuse is not a classic lesser-included offense of first-degree sexual abuse because the age of the victim at the time of the abuse is usually clear. But in those rare instances where the age of the victim at the time of the abuse is in question, sexual abuse in the second degree can be deemed a lesser-included offense of sexual abuse in the first-degree. So a trial court must instruct on both offenses, thereby leaving it to the jury to decide which offense, if any, better fits the testimony.[7] This is the precise scenario present in this case because L.H.'s testimony was so vague that the jury could

have believed beyond a reasonable doubt that Clark sexually abused him before L.H. turned twelve, after he turned twelve, or both. Since there was evidence to support a finding of either first or second-degree sexual abuse, it was incumbent upon the trial court to instruct the jury on both charges.

Our review of the record also reveals that the trial court's refusal to instruct the jury on second-degree sexual abuse caused the instruction on first-degree sexual abuse as to L.H. to be seriously flawed. That instruction stated that the jury could find Clark guilty of first-degree sexual abuse of L.H. only if it believed beyond a reasonable doubt:

A. That in this county, beginning in 1999 and continuing through and including the month of May[ ] 2002, and before the finding of the Indictment herein, he subjected [L.H.] to sexual contact,

AND

B. That at the time of such contact, [L.H.] was less than twelve (12) years of age.

So in order to convict Clark of first-degree sexual abuse, the jury had to find beyond a reasonable doubt that: (a) Clark subjected L.H. to sexual contact between 1999 **"and including the month of May[ ] 2002"** (emphasis added) and that such sexual contact occurred (b) while L.H. was less than twelve years old.[8] Those two dis-

---

**6.** KRS 505.020(2)(a); *Hudson v. Commonwealth,* 202 S.W.3d 17, 20 (Ky.2006).

**7.** *See* 1 COOPER AND CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CRIMINAL § 4.48 (stating in the commentary that "[i]f there is an issue as to the age of the victim, an instruction on Second–Degree Sexual Abuse and/or Third–Degree Sexual Abuse should be given as a lesser-included offense [of first-degree sexual abuse]"). *Cf. Tungate,* 901 S.W.2d at 44 (rejecting an argument that a trial court erred by

not instructing the jury on the lesser included offense of second-degree sexual abuse only because the evidence was undisputed that the victims were under twelve years old, without holding that sexual abuse in the second degree cannot be a lesser-included offense of sexual abuse in the first degree).

**8.** The instruction's usage of the phrase "continuing through and including" also appears to require the jury to find that Clark engaged in a continuous course of conduct toward

crete findings are inherently inconsistent since it is uncontested that L.H. turned twelve several months before May 2002. The jury simply could not have found beyond a reasonable doubt that Clark subjected L.H. to sexual contact "through and including the month of May[ ] 2002" while also finding beyond a reasonable doubt that L.H. was less than twelve years of age when that sexual contact occurred. L.H. was not less than twelve years of age by May 2002.

■ Since a juror could have had a reasonable doubt that Clark sexually abused L.H. before L.H.'s twelfth birthday, yet have been convinced beyond a reasonable doubt that Clark sexually abused L.H. after L.H.'s twelfth birthday, the failure to instruct the jury on second-degree sexual abuse cannot be deemed a mere harmless error.[9]

In summary, we acknowledge that in most situations, an instruction on second-degree sexual abuse is not a lesser-included offense when the primary charge is first-degree sexual abuse. And the trial court in this case acted properly in refusing to instruct the jury on second-degree abuse as to Clark's alleged conduct toward E.H. since E.H. turned twelve in October 2002, several months after the expiration of the time period set forth in the indictment. But in a situation like the charge involving L.H., where the date(s) of the abuse are not described with particularity in either the indictment or the testimony

such that a reasonable juror could have concluded that the victim was either eleven or twelve when the abuse occurred, a trial court errs by failing to instruct a jury on both first and second-degree sexual abuse. Thus, Clark's conviction for sexual abuse in the first degree of L.H. must be reversed.

**B. Allowing Evidence of Clark's Prior Sexual Misconduct to be Introduced During the Guilt Phase Was an Abuse of Discretion.**

■ In 1988, Clark pleaded guilty to first-degree sexual abuse and second-degree sodomy. He was sentenced to a total of fifteen years' imprisonment. But the sentence was probated for five years on condition that Clark serve three months in jail. Over Clark's objection, the Commonwealth was permitted to offer the testimony of M.M., one of the sex abuse victims in Clark's 1988 conviction. Clark now argues that the trial court's decision to permit M.M.'s testimony was reversible error. We agree.

■ Since the trial court's unique role as a gatekeeper of evidence requires on-the-spot rulings on the admissibility of evidence, we may reverse a trial court's decision to admit evidence only if that decision represents an abuse of discretion.[10] And for a trial court's decision to be an abuse of discretion, we must find that the decision "was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[11]

---

L.H. Such a requirement would be improper as Clark was charged with only one count of abuse.

**9.** *See, e.g., Webb v. Commonwealth,* 904 S.W.2d 226, 229 (Ky.1995) (holding that a trial court's "[r]efusal to allow such an instruction [on a lesser-included offense], when supported by the evidence presented, constitutes reversible error"); 1 COOPER AND CETRULO, KENTUCKY INSTRUCTIONS TO JURIES, CRIMINAL § 1.05(B) ("Cases holding that if the defen-

dant was convicted of the primary offense, a failure to instruct on a lesser included offense, or giving an erroneous instruction thereon, was harmless error probably have no present validity.") (internal footnote omitted).

**10.** *See, e.g., Brewer v. Commonwealth,* 206 S.W.3d 313, 320 (Ky.2006).

**11.** *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999).

■ In looking at whether the ruling admitting M.M.'s testimony was an abuse of discretion, we are guided by Kentucky Rules of Evidence (KRE) 404(b), which provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Generally, a defendant's prior bad acts are inadmissible because "[u]ltimate fairness mandates that an accused be tried only for the particular crime for which he is charged. An accused is entitled to be tried for one offense at a time, and evidence must be confined to that offense.... The rule is based on the fundamental demands of justice and fair play." [12]

We have construed KRE 404(b) as being exclusionary in nature since "[i]t is a well-known fundamental rule that evidence that a defendant on trial had committed other offenses is never admissible unless it comes within certain exceptions, which are well-defined in the rule [KRE 404(b)] itself." [13] For that reason, any exceptions to the general rule that evidence of prior bad acts is inadmissible should be "closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence." [14]

■ KRE 404(b)(1) provides that evidence of prior crimes or wrongs is admissible if offered for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident[.]" In this case, M.M.'s testimony

does not neatly fit into any of the exceptions enumerated in KRE 404(b)(1). But that list of exceptions is illustrative, not exhaustive. [15] Among the non-enumerated exceptions we have recognized to KRE 404(b)'s general prohibition on the introduction of prior bad acts evidence is the exception advanced here by the Commonwealth, and accepted by the trial court and Court of Appeals: modus operandi. [16] So, in order to resolve Clark's case, we must enter yet again the murky waters of determining whether prior sexual misconduct by a defendant is admissible, a difficult, fact-specific inquiry, as evidenced by the fact that we once deemed our own opinions on this topic to have been "somewhat scattered." [17]

■ The modus operandi exception requires "the facts surrounding the prior misconduct must be so strikingly similar to the charged offense as to create a reasonable probability that (1) the acts were committed by the same person, and/or (2) the acts were accompanied by the same *mens rea*. If not, then the evidence of prior misconduct proves only a criminal disposition and is inadmissible." [18]

In *English*, we affirmed the trial court's admission of evidence of prior acts of sexual misconduct toward other victims, recognizing that "the evidence was offered to show a modus operandi for the purpose of proving motive, intent, knowledge, and the absence of mistake or accident[.]" [19] Specifically, the prior bad acts in *English*

---

12. *O'Bryan v. Commonwealth*, 634 S.W.2d 153, 156 (Ky.1982) (although *O'Bryan* predates the adoption of the Kentucky Rules of Evidence, the quoted language is in accordance with KRE 404(b)).

13. *Commonwealth v. Buford*, 197 S.W.3d 66, 70 (Ky.2006).

14. *O'Bryan*, 634 S.W.2d at 156.

15. *Tamme v. Commonwealth*, 973 S.W.2d 13, 29 (Ky.1998).

16. *See, e.g., English*, 993 S.W.2d at 945.

17. *Billings v. Commonwealth*, 843 S.W.2d 890, 893 (Ky.1992).

18. *English*, 993 S.W.2d at 945.

19. *Id.*

demonstrated that contrary to the defendant's statement to the police that he "might" have inappropriately touched a victim without realizing it, he actually touched the victim on purpose (*i.e.*, intent, absence of mistake or accident); and he touched the victim for his own sexual gratification (*i.e.*, motive). Thus, the prior bad acts demonstrated the necessary *mens rea* or mental state.

In the case before us, there is no indication that M.M.'s testimony was offered to prove Clark's mental state, since there is no indication that Clark might have unintentionally committed the alleged sexual acts toward L.H. and E.H. Likewise, there is no indication that another perpetrator abused L.H. and E.H., such that the perpetrator's identity was at issue.[20] Rather, M.M.'s testimony was offered to prove the other "fundamental" element of the crimes against L.H. and E.H.: "[*corpus delicti* ]—whether the event occurred at all." [21] Nonetheless, the question of *corpus delicti* is intertwined with that of identity because striking similarities in factual details between the prior bad acts and the current charges could demonstrate that "[i]f the act occurred, then the defendant almost certainly was the perpetrator" such that it is proper "to treat the evidence as if offered to prove identity by similarity, and to require that the details of the charged and uncharged acts be sufficiently similar to demonstrate a modus operandi." [22]

We have attempted to clarify and refine our analysis of the modus operandi exception in recent reported decisions of this Court. Toward that end, we held that "it is not the commonality of the crimes but the commonality of the facts constituting the crimes that demonstrates a modus operandi." [23] So, as a prerequisite to the admissibility of prior bad acts evidence, we now require the proponent of the evidence to "demonstrate that there is a factual commonality between the prior bad act and the charged conduct that is simultaneously similar and so peculiar or distinct that there is a reasonable probability that the two crimes were committed by the same individual." [24] Thus, "[a]lthough it is not required that the facts be identical in all respects, 'evidence of other acts of sexual deviance ... must be so similar to the crime on trial as to constitute a so-called signature crime.' " [25]

With the background of our recent precedent in mind, as the proponent of the prior bad acts evidence, the Commonwealth bore a heavy burden to meet that evidentiary standard. In order to determine whether the Commonwealth met that burden, we must engage in a searching analysis of the similarities and dissimilarities between Clark's admitted misconduct toward M.M. and his alleged misconduct toward E.H. and L.H., bearing in mind that "[i]t is inevitable, particularly when the prior act amounts to an earlier violation of the charged offense, that there will be some basic similarities between the pri-

**20.** Identity would be another proper reason to admit modus operandi evidence. *See* UNDERWOOD & WEISSENBERGER, KENTUCKY EVIDENCE 2002 COURTROOM MANUAL at 108 (2001).

**21.** *Billings,* 843 S.W.2d at 892. *See also Dickerson v. Commonwealth,* 174 S.W.3d 451, 469 (Ky.2005) ("In the present case—as in many involving charges of sexual crimes—the ascendant issue is the [*corpus delicti* ]— whether the event occurred at all.").

**22.** *Billings,* 843 S.W.2d at 893.

**23.** *Dickerson,* 174 S.W.3d at 469.

**24.** *Buford,* 197 S.W.3d at 71.

**25.** *Dickerson,* 174 S.W.3d at 469 (*quoting Rearick v. Commonwealth,* 858 S.W.2d 185, 187 (Ky.1993)).

or bad act and the new criminal conduct."[26]

As a prefatory matter, we note that the baseline fact that there was sexual contact between Clark and M.M., E.H., and L.H. is, in and of itself, not a distinct pattern sufficient to satisfy the modus operandi exception. Indeed, such sexual contact is a necessary prerequisite for the commission of the offense. In other words, the fact that Clark touched the penis of all three victims is merely an element of the offense of first-degree sexual abuse.[27] Because a person must satisfy all of the elements of the crime in order to commit first-degree sexual abuse, the fact alone that Clark touched the penis of all three victims is a mere element of the crime. Likewise, the fact that all three victims were apparently less than twelve years of age at the time they were subjected to sexual contact by Clark is also an element of the crime and is not strong evidence of a distinct pattern of conduct sufficient to meet the modus operandi exception. So, for the benefit of the bench and bar of this Commonwealth, we stress the fundamental principle that conduct that serves to satisfy the statutory elements of an offense will not suffice to meet the modus operandi exception. Instead, the modus operandi exception is met only if the conduct that meets the statutory elements evidences such a distinctive pattern as to rise to the level of a signature crime.

The question is, therefore, what other similarities exist between Clark's abuse of M.M. and his later alleged abuse of E.H. and L.H., such that Clark's abuse of all three falls into the distinct pattern necessary to qualify for the modus operandi exception? The Commonwealth relies upon the following alleged similarities: all three victims were of the same approximate age; Clark put his hands inside each victim's pants and fondled the penis; Clark never asked any of the three victims to reciprocate his sexual contact with them; and Clark was in a position of trust with each victim.

We agree with the Commonwealth that the age of all three victims was similar. Although the fact that each victim was under twelve is evidence to satisfy the statutory element, not evidence sufficient to meet the modus operandi exception, the fact that the victims were of fairly similar ages—all prepubescent males—is entitled to at least some weight toward meeting the Commonwealth's burden under the modus operandi exception.

But we do not agree with the Commonwealth that the fact that Clark fondled each victim's penis is a significant factor to show the distinctive pattern necessary to meet the modus operandi exception. Contact between the abuser and the intimate body parts of the abused appears only to meet the requisite sexual contact necessary to commit first-degree sexual abuse. This conclusion that Clark's fondling of all three victims is not sufficiently distinctive to rise to the level necessary to meet the modus operandi exception is reinforced by the fact that Clark did not only fondle his victims' penises—he subjected two of the victims to oral-genital contact. The lack of a consistent allegation that Clark placed his mouth on the penis of all of his victims greatly undercuts the purported distinct pattern to Clark's abuse. We agree with the Commonwealth that the fact that

---

**26.** *Buford,* 197 S.W.3d at 71.

**27.** *See* KRS 510.110(b)2 (providing that a person commits sexual abuse in the first degree when he subjects someone less than twelve years of age to "sexual contact.") KRS 510.010(7) defines "sexual contact" as "any touching of the sexual or other intimate parts of a person...."

Clark never sought reciprocal sexual contact by any of the three victims weighs in favor of a modus operandi exception in this case.

Finally, though we accept the Commonwealth's premise that Clark was in a position of trust as to all three victims, we disagree with the Commonwealth's contention that Clark's position of trust relative to each victim has significant weight in meeting the modus operandi exception. Clark's role was vastly different with M.M. than it was with E.H. and L.H. Clark was acting as a counselor or confessor in his role as M.M.'s priest; but he was a long-time family friend to L.H. and E.H., which did not involve his role as a pastor. Thus, it can neither be said that Clark evidenced a distinctive pattern of abusing children he contacted in his role as a pastor, nor can it be said that Clark only abused children he came into contact with in his non-professional life. Since Clark's position and status with M.M. was markedly different than it was with E.H. and L.H., we cannot accept the Commonwealth's contention that Clark was in a position of trust as to all victims in a sufficiently similar manner to meet the modus operandi exception.

When all the similarities are considered, what we are left with is Clark reaching his hands down the pants of three victims who were all of the same approximate age without asking the victim to reciprocate the sexual contact. By contrast, there are numerous differences in Clark's conduct toward all three victims. As previously mentioned, not all of the victims accused Clark of orally abusing them. And though we agree with the trial court that it is not necessary that the abuse always occur in the same geographical location, the abuse of all three victims occurred in many different places, such as school, bedrooms, bathrooms, living rooms, and vehicles. Moreover, Clark sometimes abused the children when he was alone with them and sometimes abused them when others were around. Finally, Clark's position with regard to M.M. and E.H. and L.H. is vastly different because he was a counselor and priest to M.M., while he was a longstanding friend of the family of E.H. and L.H. So, it appears that, at most, there were as many differences as similarities between Clark's past and current alleged conduct. This state of relative equipoise is insufficient to meet the demanding modus operandi exception.[28]

Even *Anastasi v. Commonwealth*,[29] which we have acknowledged "pressed the limits of admissibility of other uncharged criminal acts on grounds of similarity sufficient to indicate a modus operandi[,]"[30] presented a more compelling pattern of similar conduct than does the case before us. Though it predates our recent reiteration that the focus on prior bad acts

28. *See, e.g., Buford,* 197 S.W.3d at 71 ("We recount these arguments to demonstrate that given two factual scenarios, clever attorneys on each side can invariably muster long lists of facts and inferences supporting both similarities and differences between the prior bad acts and the present allegations. It is inevitable, particularly when the prior act amounts to an earlier violation of the charged offense, that there will be some basic similarities between the prior bad act and the new criminal conduct.... Ultimately, the Commonwealth must demonstrate that there is a factual commonality between the prior bad act and the charged conduct that is simultaneously simi-

lar and so peculiar or distinct that there is a reasonable probability that the two crimes were committed by the same individual. Notwithstanding the competing lists of facts and inferences offered by either party, there is nothing in the record of this case which demonstrates the requisite striking similarity between the incident involving S.B. and that involving J.R. or H.S.").

29. 754 S.W.2d 860 (Ky.1988).

30. *Rearick,* 858 S.W.2d at 188.

under the modus operandi exception must be on the common facts, not the commonality of the crimes, *Anastasi* is entirely reconcilable with that principle, as well as with our conclusion that there is not enough distinctive commonality of facts to meet the modus operandi exception in this case.

*Anastasi*, as in the case before us today, involved charges of first-degree sexual abuse. At trial, the Commonwealth was permitted to have a witness testify that the defendant anally raped him eight years before. Despite the fact that rape is obviously an offense with different elements than the charged crime of first-degree sexual abuse, we affirmed because the defendant's conduct toward all victims, including the rape victim, was strikingly similar. We said that "[t]he evidence in this case disclosed that all victims were young boys with whom Anastasi managed to be alone in bedrooms. In each instance he was dressed only in his underwear and all victims, except one, were clothed only in underwear. In each case, prior to the sexual contact, he tickled and wrestled with the children." [31] As previously shown, there simply is not such a distinctive pattern of misconduct by Clark in the case before us.

■ Even if we had determined that the Commonwealth had satisfied a minimal showing of a distinctive pattern of conduct by Clark sufficient to constitute a signature crime, the probative value of M.M.'s testimony as to that pattern would have been destroyed by the fact that Clark's abuse of M.M. occurred over twenty years before the case before us today.[32] Temporal remoteness goes to the weight, not the admissibility, of the prior bad acts evidence.[33] The temporal remoteness of the prior bad acts is of less concern when the evidence of the pattern of conduct falls within a clearly defined, distinctive pattern.[34] As previously stated, however, Clark's conduct toward M.M. does not bear the hallmarks of a signature crime, meaning that the vast time lapse between Clark's abuse of M.M. and his trial for abusing L.H. and E.H. is a significant counterweight when balancing the probative value of M.M.'s testimony and the undue prejudice it caused Clark. This is true especially in light of the fact that the Commonwealth has cited no authority in which we deemed a twenty-plus year old sexual bad act to be admissible. In fact, we have condemned the introduction of prior bad acts that were far less remote

31. *Anastasi*, 754 S.W.2d at 862.

32. *Robey v. Commonwealth*, 943 S.W.2d 616, 618 (Ky.1997) ("This Court has a continuing problem in deciding when evidence of prior acts become too remote to be admissible, and we have refused to adopt a bright line ruling concerning the temporal remoteness of other crimes. KRE 403 requires that the probative value of evidence, even if relevant, must substantially outweigh the danger of undue prejudice. The requirement that the prior act be 'not too remote' is integral to determining the probative value of the evidence. Thus, an *independent act too remote in time will fail the balancing test required by KRE 403.*"); *Gray v. Commonwealth*, 843 S.W.2d 895, 897 (Ky.1992) ("As summarized above, the various allegations here evince no striking similarity indicative of a modus operandi relevant to the charge. Only the first two incidents related by the third witness exhibit even a general correspondence to the offense being tried. But any probative worth which that resemblance might endue is diminished by the significant temporal remoteness of those events. For these reasons, and on the principles more fully explained in our opinion in [*Billings v. Commonwealth*, 843 S.W.2d 890 (Ky.1992)], rendered today, we hold that the testimony as to prior sexual acts in this case was more unfairly prejudicial than genuinely probative.").

33. *English*, 993 S.W.2d at 945.

34. *Lear v. Commonwealth*, 884 S.W.2d 657, 660 (Ky.1994).

than the one in the case at hand.[35] Therefore, given the lack of distinctive similarities between Clark's conduct toward M.M. and his conduct toward E.H. and L.H., we find that the probative value of M.M.'s testimony was greatly diminished by the temporal remoteness of Clark's abuse of M.M.

In short, we find that the Commonwealth has not met its heavy burden to show that Clark's conduct toward M.M., E.H., and L.H. is so similar and distinctive as to be admissible under the modus operandi exception to KRE 404(b). That conclusion is reinforced by the twenty-year time gap with Clark's prior sexual bad acts toward M.M. Therefore, under the set of facts of this case, we find that "ultimate fairness" and the "fundamental demands of justice and fair play" required Clark to be tried for only the crimes for which he was charged; and the trial court abused its discretion by permitting M.M. to testify about the offense committed by Clark.[36]

**C. We Cannot Determine the Admissibility of the Videotaped Interviews of E.H. and L.H. Because Those Videotapes Are Not in the Record.**

Clark contends that the trial court erred by refusing to permit him to play videotapes to the jury that allegedly show a social worker "coaching" E.H. and L.H. Clark contends that the tapes are self-authenticating and admissible because they were provided to him by the Commonwealth in discovery. The Commonwealth contends that Clark failed to lay a proper foundation for the introduction of these tapes because he did not ask L.H. about the tapes and only asked one compound question of E.H. about the tapes.[37]

Although this issue presents a potentially important question as to the foundational requirements needed to introduce a videotape purporting to show that a witness had been coached, we are precluded from addressing that issue on its merits because the tapes are not in the record. Surprisingly, the tapes' absence from the record was not mentioned in the Court of Appeals' opinion, nor was it mentioned in the parties' briefs or during the extensive oral argument we heard on this issue.

At a bench conference conducted by the trial court after the Commonwealth had rested and Clark's motion for a directed verdict had been denied, the Commonwealth stated its objection to Clark's counsel's intention to play the videotaped interviews of E.H. and L.H. After discussion, the trial court stated that it believed the tapes were not admissible but further indicated that it would give counsel time during the lunch recess to research the issue. Before that lunch break, Clark's counsel had the following discussion with the trial court:

MR. LAMBERTUS: All right.

Judge, if the Court does not re-visit this and allow these tapes, then I would submit for the record that I would like

---

35. *See, e.g., Gray,* 843 S.W.2d at 897; *Robey,* 943 S.W.2d at 618 (holding that in a prosecution for rape, evidence of an earlier rape should not have been admissible because "[t]he evidence of a single sixteen-year-old conviction, although the crimes had similar aspects, was simply too remote.").

36. *O'Bryan,* 634 S.W.2d at 156.

37. During cross-examination, the following colloquy occurred between E.H. and Clark's counsel:
Q. Do you remember when you first started talking about that you went to see a social worker and as to your statements they had a video tape of it. Do you remember that?
A. No.
Q. You do remember talking to a social worker about this?
A. Yes.

these to be part of the appellate record for review.

THE COURT: Well, (1) I will re-visit the issue. I have already indicated to Counsel I will do that. (2) I am not going to indicate in advance how I am going to rule without looking at the authority.

MR. LAMBERTUS: Thank you, Judge.

After that exchange, Clark testified in his own behalf. The lunch recess followed. Then the parties again took up with the trial court the discussion of the admissibility of the tapes. At the conclusion of the discussion, the trial court ruled that the tapes were inadmissible. Clark's counsel did not renew his request to make the tapes a part of the record for appellate purposes at that time. Instead, it was after the jury had found Clark guilty that the following exchange occurred:

> MR. LAMBERTUS: Judge, I mentioned yesterday, or whenever, that I wanted the video tapes that the Court excluded as part of the appellate record. If I could at some point mark those Defendant's Exhibit whatever for the record and give those to the court reporter.
>
> THE COMMONWEALTH: Are you doing that by avowal?
>
> MR. LAMBERTUS: I mentioned the other day. I notice they are still sitting on my desk and I haven't marked them.
>
> THE COURT: All right. The two video tapes may be marked by Defense Counsel as Defense Exhibits Proposed but

rejected by the Court for the reason stated by the Court from the bench.[ ]

(DEFENDANT PROPOSED EXHIBIT NO. 1 MARKED FOR IDENTIFICATION)

The record does not reflect whether Clark's counsel gave the videotapes to either the judge or the court reporter. We have tried diligently to find the tapes so that we could view them but have been unable to do so.

 Although each case is factually distinguishable from the one before us, we have consistently and repeatedly held that it is an appellant's responsibility to ensure that the record contains all of the materials necessary for an appellate court to rule upon all the issues raised.[38] And we are required to assume that any portion of the record not supplied to us supports the decision of the trial court.[39]

Although the record contains a parenthetical notation by the court reporter that the tapes were marked as a defense exhibit, there is no indication that the tapes themselves were ever delivered to either the court reporter or to the trial court. Although written in a different context, we have recently noted that we can rule solely upon the record presented to us.[40] Since we "simply cannot address admissibility and prejudice issues in a vacuum," [41] we cannot determine whether the trial court erred by refusing to admit into evidence videotapes that we cannot view. Thus, we

---

38. *See, e.g., Commonwealth v. Thompson,* 697 S.W.2d 143 (Ky.1985); *Fanelli v. Commonwealth,* 423 S.W.2d 255 (Ky.1968).

39. *Thompson,* 697 S.W.2d at 145. It must be noted, however, that it does not appear as if the trial court ever viewed the tapes in question; nor, we must presume from the fact that it is not contained in the record presented to us, did the Court of Appeals.

40. *See Commonwealth v. Ferrell,* 17 S.W.3d 520, 525 n. 10 (Ky.2000) ("Appellate courts review records; they do not have crystal balls.").

41. *Id.* at 525.

must affirm the trial court's decision to refuse to admit the videotapes.[42]

## IV. CONCLUSION.

For the reasons stated, Daniel Clark's convictions for sexual abuse in the first degree are reversed; and this case is remanded to the circuit court for proceedings consistent with this opinion.

LAMBERT, C.J., and McANULTY, NOBLE, and SCHRODER, JJ., concur.

SCOTT, J., dissents by separate opinion in which CUNNINGHAM, J., joins.

Dissenting Opinion by Justice SCOTT.

I concur with the majority's determination that the trial court must be affirmed regarding its decision to deny admittance of the video tapes into evidence. However, I must respectfully dissent because I do not believe the trial court erred when it overruled Appellant's motion to instruct on an unindicted crime. I also dissent because I do not believe the trial court abused its discretion when it permitted testimony from one of Appellant's prior victims.

## I. Refusal to instruct on unindicted crime was not error.

The testimony in this case was undisputed. L.H.'s testimony indicated that Appellant molested him on a continual basis for almost three (3) years—between 1999 and May 2002. L.H. turned twelve (12) in November 2001. Since some of the sexual abuse may have occurred after L.H.'s twelfth birthday, Appellant could have been charged with and found guilty of: (1) sexual abuse in the first degree; (2) sexual abuse in the second degree; or (3) both crimes.

The majority makes much of the fact that although the evidence was sufficient to support charging Appellant with several crimes, Appellant was charged with only one crime. While this may be a legitimate criticism, it is not for this Court to dictate the crimes with which a defendant should be indicted. Right or wrong, the grand jury utilized its discretion to indict Appellant only on sexual abuse in the first degree, even though it could also have indicted Appellant for sexual abuse in the second degree. Since these crimes are not mutually exclusive, i.e. conviction of one crime does not preclude conviction of the other, the trial court was not mandated to submit an instruction for the separate, uncharged, but "lesser" crime of sexual abuse in the second degree. *See Hudson v. Commonwealth*, 202 S.W.3d 17, 22 (Ky.2006) ("An instruction on a separate, uncharged, but 'lesser' crime-in other words, an alternative theory of the crime-is required only when a guilty verdict as to the alternative crime would amount to a defense to the charged crime, i.e., when being guilty of both crimes is mutually exclusive."). To hold as the majority does today "would allow a criminal appellant to seek reversal of his conviction simply because the trial court failed to instruct as to all the criminal acts he may have committed, regardless of whether the other uncharged crimes have any bearing on guilt as to the charged crimes." *Id.*

I further disagree with the majority's holding that Appellant was entitled to an instruction on sexual abuse in the second degree as a "lesser-included offense." *See Thomas v. Commonwealth*, 170 S.W.3d 343, 349 (Ky.2005) ("An instruction on a lesser-included offense is required if the evidence would permit the jury to rationally find the defendant not guilty of the

---

**42.** Because they are not in the record before us, we express no opinion as to whether the videotapes are admissible upon retrial, presuming that they are found.

primary offense, but guilty of the lesser offense."). The majority's argument would have merit if this truly was one of those "rare instances where the age of the victim at the time of the abuse is in question." Op. at 94. But that is simply not the case.

There can be no question as to L.H.'s age at the time of the abuse because the evidence was undisputed; it indicated that L.H. was molested repeatedly between his ninth and twelfth birthdays. *Since Appellant was not charged with any crimes that occurred after L.H.'s twelfth birthday*, it would not have been rational for the jury to find Appellant guilty of sexual abuse in the second degree.[1] Accordingly, I believe an instruction on sexual abuse in the second degree as a "lesser-included offense" was clearly improper in this case.

Finally, I see no "serious[ ] flaw" in the jury instruction regarding sexual abuse in the first degree of L.H. Op. at 94. The instruction required the jury to make two findings:

A. That in this county, beginning in 1999 and continuing through and including the month of May[ ] 2002, and before the finding of the Indictment here, he subjected [L.H.] to sexual contact;

AND

B. That at the time of such contact, [L.H.] was less than twelve (12) years of age.

Contrary to the majority's assertions, there is nothing "inherently inconsistent" about these findings. Op. at 95. The first finding sets forth the broad period of time during which L.H. testified he was exposed to abuse; and the second finding sets forth that L.H. was less than twelve years of age *at some point* during this period.[2] The jury's narrowed focus was required, of course, because although crimes may have occurred after L.H.'s twelfth birthday, Appellant was not indicted or charged with any of those crimes.

Indeed, these instructions were not plucked from thin air, but rather they were crafted to conform with the evidence as it was presented at trial—that Appellant molested L.H. repeatedly between his ninth and thirteenth birthdays, but that Appellant was only being prosecuted for crimes which occurred prior to L.H.'s twelfth birthday. When the plain meaning of these instructions are properly considered in light of the evidence presented at trial, there is simply nothing about the instructions that could fairly be classified as misleading, inaccurate, or inconsistent. Accordingly, I respectfully dissent because I do not believe there was error regarding the instructions submitted to the jury in this case.

## II. Permitting testimony of prior victim was not abuse of discretion.

The majority also faults the trial court for making a very close call on whether the crimes committed against M.M. were "so strikingly similar to the charged offense as to create" a modus operandi. *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). Although the majority disagrees with the trial court's ultimate de-

---

1. If the jury somehow believed that abuse occurred after L.H.'s twelfth birthday, but not prior, the proper verdict in this case would have been not guilty. Of course, this scenario is implausible since L.H. was unable to specify the time when each act of abuse occurred (other than to say that sexual abuse occurred repeatedly during the three year span refer-

enced above). Thus, L.H.'s credibility was an all or nothing proposition; the jury had no choice but to believe or discount the testimony in its entirety.

2. Thus, the second finding was simply a subset of the first finding.

termination, it is not proper for this Court to set the trial court's determination aside unless the decision is clearly "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* Because I believe the trial court's decision is nowhere close to arbitrary or unfair, I dissent from the majority's holding that the trial court's discretion must be overruled.

Although paying lip service to the concept, the majority fails to respect the "difficult, fact-specific inquiry" conducted by the trial court. Op. at 96. In this case, Appellant was in a position of trust with all three boys, all the boys were about the same age, and most strikingly, Appellant molested all the boys in the same manner. The molestation is particularly unique because the testimony established that Appellant fondled each boy's genitalia and sometimes performed oral sex on the boys, but never asked the boys to reciprocate or touch Appellant in anyway.

The pertinent analysis in this case is "whether there exist common facts between the acts ... not whether there was common criminality." *Martin v. Commonwealth,* 170 S.W.3d 374, 380 (Ky.2005). In an attempt to apply the above principle, the majority completely discounts striking similarities in Appellant's conduct towards each boy because "sexual contact" and "age" are "mere element[s] of the crime." Op. at 98. Yet, this is clearly a misapplication of the above principle since it is the factual details of each element of a crime which establish the common facts in any particular analysis.

Indeed, this Court has on several occasions considered the factual details of sexual contact when determining whether evidence of a past crime is admissible. *See, e.g., Funk v. Commonwealth,* 842 S.W.2d 476, 480–81 (Ky.1992) (past crime was similar enough to be admissible in large part because defendant was alleged to have digitally penetrated both child victims), *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky.1999) (fact that defendant touched vaginal area of each victim was relevant in determining whether past crimes were "strikingly similar" enough to be admissible); *Martin,* 170 S.W.3d at 380 (striking similarity in crimes included fact that victims were "abused by similar touching of the vaginal area, always without penetration"). *Cf. Dickerson v. Commonwealth,* 174 S.W.3d 451, 469 (Ky.2005) (modus operandi was not established in large part because "no facts were introduced to describe the nature of the acts of sodomy" which were perpetrated against each victim). The same is true with age. *See, e.g., Anastasi v. Commonwealth,* 754 S.W.2d 860, 862 (Ky.1988) (fact that all victims were "young boys" was relevant in establishing "pattern of conduct"); *English,* 993 S.W.2d at 945 (fact that each victim was a "prepubescent female" was relevant in determining similarity of past crimes); *Martin,* 170 S.W.3d at 380 (striking similarity in crimes included fact that victims were "between the ages of five to eleven years old at the time of the abuse"). Thus, I believe it was proper for the trial court to consider the strikingly similar ages of each victim at the time of their molestation, as well as the strikingly similar nature of the sexual contact perpetrated by Appellant against each victim, as significant factors in establishing a distinct pattern of conduct by Appellant.

The majority further fails to give proper weight to the fact that Appellant placed himself in a position of trust with each one of these boys. The majority emphasizes a superficial difference between Appellant's roles as it related to each of the victims— Appellant served in the role of priest with M.M. and then in the role of longtime family friend with E.H. and L.H. While this difference is relevant and should be

considered, the majority overemphasizes the significance of this superficial title change.

It is relevant to consider that Appellant could no longer utilize the priest role as a means to victimize children since he was removed from that position due to his misconduct against M.M. Second and most pertinent, of course, is that although his title may have been different, his position of power and influence in relation to each victim remained the same. As both a priest and a family friend, Appellant placed himself in a position where young boys looked up to him, trusted him, and sought his counsel and advice. This is a unique and peculiar characteristic that is pertinent to establishing a pattern of conduct and should not be discounted simply because the wolf changed its clothing.

In regard to the differences between the victims, the majority's points are weak. First, while all three victims accused Appellant of fondling their genitals, E.H. and M.M. alleged that Appellant performed oral sex as well. Second, the abuse occurred in different locations. Finally, Appellant was a priest when he abused M.M., but only a family friend when he abused E.H. and L.H.

In assessing whether evidence is sufficient to constitute a modus operandi, "it is not required that the facts be identical in all respects." *Dickerson v. Commonwealth*, 174 S.W.3d 451, 469 (Ky.2005). In this case, the differences are primarily ones of circumstance. When the differences and similarities are balanced in light of the totality of the evidence, the differences are simply not substantial enough to outweigh or dilute the strikingly similar pattern of conduct perpetrated against M.M., E.H., and L.H. *See Anastasi*, 754 S.W.2d at 861 (strikingly similar conduct found even though sex acts were different and the age of the victims were different); *Martin*, 170 S.W.3d at 380 (strikingly similar conduct found even though defendant was accused of committing sodomy with only one of three victims, defendant bribed the children with different things, and defendant variously committed acts with one and two children at a time).

Finally, the majority misstated current law when it declared that "the probative value of M.M.'s testimony as to [Appellant's] pattern [of conduct] would have been destroyed by the fact that [Appellant's] abuse of M.M. occurred over twenty years before the case before us today." Op. at 100. In *Commonwealth v. English*, this Court established that "temporal proximity . . . is less significant when the issue is modus operandi. . . ." 993 S.W.2d at 944 (citing with approval a North Carolina case which upheld "admission of evidence of a prior wrongful act which occurred seventeen years before the charged offense"). "Thus, if the prior wrongful act, or a particular aspect thereof, is so similar to the charged offense as to show a modus operandi which tends to prove an element of the charged offense, remoteness alone *does not require* suppression of the evidence of the prior misconduct." *Id.* (Emphasis added). Moreover, contrary to the majority's assertion, the Commonwealth did cite authority by this Court which approved temporally remote evidence of sexual bad acts.[3] *See Lear v. Commonwealth*, 884 S.W.2d 657, 659–660 (Ky.1994) (although prior bad act was temporally remote, victim's mother, who herself had been raped by same defendant as a child,

---

**3.** While the opinion does not reference the actual difference in time between the rape of the mother and the rape of her own daughter, one could make an educated guess that the prior bad act occurred no less than fifteen (15) years, and more than likely closer to twenty (20) years, before the charged offense.

was permitted to testify regarding her abuse).

When the evidence is viewed in a fair and balanced light, it was not unreasonable or arbitrary for the trial court to determine that the crimes committed against M.M. were "so strikingly similar to the charged offense as to create" a modus operandi. *Id.* at 945. Therefore, I must respectfully dissent because it is improper for this Court to overrule the trial court's discretionary determination merely because it would have ruled differently.

CUNNINGHAM, J., joins this dissent.