# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: FEBRUARY 18, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2014-SC-000310-MR

DATE 3/10/16 Charity Kittrell D.C.

ROBERT CURRY                                     APPELLANT

|  | ON APPEAL FROM HARLAN CIRCUIT COURT |
| --- | --- |
| V. | HONORABLE DAVID L. WILLIAMS, SPECIAL JUDGE |
|  | NO. 13-CR-00246 |

COMMONWEALTH OF KENTUCKY                      APPELLEE

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

A jury convicted Robert Curry of the intentional murder of Bruce Penix, and the court sentenced him to twenty-five years' imprisonment. Curry appeals that conviction as a matter of right. Ky.Const. § 110(2)(b). On appeal, Curry argues that his conviction should be reversed because the trial court refused to grant his motion for a continuance and improperly restricted his ability to cross-examine a witness. We discern no error and, for the reasons set forth below, affirm.

## I. BACKGROUND.

In September 2012, John Anderson was homeless and sleeping in a pickup truck parked near Penix's house. Penix, whom Anderson had known and sometimes lived with, let Anderson use the bathroom in his house. Sometime during the evening of September 5, 2012, Anderson went to Penix's house to bathe. While Anderson was there, Curry arrived, and Curry and

Penix began drinking. When the two became intoxicated, Anderson left and went to the truck to sleep.

Early in the morning of September 6, 2012, Anderson returned to Penix's house and saw Penix, who was covered in blood, lying on the floor. Anderson felt Penix's neck to see if he was alive and, when he determined that Penix was not, called 911. While he was on the phone with the 911 operator, Anderson saw Curry lying on the floor near a couch. He checked Curry, determined that Curry was alive, and went outside to wait for emergency personnel to arrive.

When police officers arrived, Curry, who was initially difficult to arouse and was later determined to be intoxicated, was covered in blood. The officers arrested Curry and transported him to the state police post for questioning. The officers observed that Curry's hands were bruised and swollen and, after the medical examiner determined that Penix had been beaten to death, a grand jury indicted Curry on multiple counts, the only pertinent one of which is intentional murder.[1]

Curry's defense theory at trial was that someone else had beaten Penix to death, and he pointed to Anderson and two other men as possible alternative perpetrators. The jury did not believe his alternative perpetrator theory and convicted Curry of intentional murder. We set forth additional background information as necessary below.

---

[1] The grand jury also charged Curry with being a persistent felony offender (PFO), resisting arrest, and disorderly conduct. The Commonwealth voluntarily dismissed or the trial court granted a directed verdict on all but the PFO charge.

## II. ANALYSIS.

### A. The Trial Court Did Not Abuse Its Discretion When It Denied Curry's Motion for a Continuance.

As part of the investigation, police collected a substantial amount of physical evidence that they submitted to the state crime lab for analysis. The Commonwealth provided Curry with copies of the forensic analysis reports regarding that evidence in mid-January 2014, approximately one month before trial.

Twelve days before trial, Curry moved the court for a continuance. In support of his motion, Curry argued that the forensic reports contained exculpatory evidence, in particular, evidence that Penix had hair in both hands that did not belong to him or Curry. Curry also argued that the reports indicated that blood samples taken from Penix's house and bloody footprints brought his guilt into doubt. When the court asked Curry if he needed additional time to have the evidence examined by his own expert, Curry stated that he did not intend to do so, but that he needed additional time to gather facts, conduct interviews, and investigate whether other people had motive to kill Penix. The court then asked if Curry intended to obtain DNA or other physical evidence from these other people to submit for comparison purposes. Curry stated that he had no such intention. In light of Curry's statements, and noting that the case had been pending for nearly a year and a half, the court found that Curry's reasons were not sufficiently compelling to mandate a continuance. Therefore, the court denied Curry's motion.

A trial court may grant a postponement of a trial "upon motion and sufficient cause shown by either party." Kentucky Rule of Criminal Procedure (RCr) 9.04. The trial court has broad discretion in ruling on a motion for continuance and denial of such a motion will not be grounds for reversal of a conviction "unless that discretion has been plainly abused and manifest injustice has resulted." *Taylor v. Commonwealth,* 545 S.W.2d 76, 77 (Ky. 1976). In determining whether to grant a motion for a continuance, the court should consider the totality of the circumstances, focusing on the following factors: "length of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice." *Snodgrass v. Commonwealth,* 814 S.W.2d 579, 581 (Ky. 1991), *overruled on other grounds by Lawson v. Commonwealth,* 53 S.W.3d 534 (Ky. 2001). "Identifiable prejudice is especially important. Conclusory or speculative contentions that additional time might prove helpful are insufficient. The movant, rather, must be able to state with particularity how his or her case will suffer if the motion to postpone is denied." *Bartley v. Commonwealth,* 400 S.W.3d 714, 733 (Ky. 2013).

On appeal, Curry argues that an evaluation of the *Snodgrass* factors "favored granting the continuance." Specifically, he notes that the length of the requested continuance was short and the Commonwealth did not identify any inconvenience to witnesses that would result from a continuance.

4

Furthermore, he argues that he suffered significant prejudice because he could not "further investigate the findings of the forensic report[s]," and he "could have presente[ed] more information to the jury . . . [and] could have more effectively presented [his] case to the jury." We disagree for two reasons.

First, based on our review of the record, Curry did not ask the trial court for a continuance to further investigate the findings of the forensic reports. He asked for a continuance to further investigate his alternative perpetrator theory. Evidence from the scene of blood, DNA, and hair from an unknown person or persons certainly bolstered that theory. However, Curry did not indicate how any findings in the forensic reports would have changed or furthered his investigation, nor did he say how he would have used evidence from those reports in his investigation. Second, Curry's argument that he would have been presented a more effective case is an example of a conclusory and speculative contention that is not a sufficient reason to compel a continuance. *Bartley*, 400 S.W.3d at 733. Therefore, we discern no abuse of discretion in the trial court's denial of Curry's motion for a continuance.

**B.    The Trial Court Did Not Abuse Its Discretion When It Restricted Curry's Cross-Examination of Anderson.**

Anderson testified that, when he left Penix's house, only Penix and Curry were there. He also testified that when he returned and found Penix's body, the only other person he saw in the house was Curry. Curry did not testify, but he did call Penix's girlfriend, who testified that, when she spoke with Penix on the phone that night, she heard a third person speaking in the background.

As noted above, Curry's theory of defense was that some other person or persons killed Penix, and he focused on Anderson as the primary alternative perpetrator. To that end, Curry put on evidence that: Anderson, who walked with a cane, changed canes after Penix's death; Anderson told at least one person that someone else was in the house when he discovered Penix's body; Anderson had an affair with Penix's girlfriend shortly after Penix's death; Anderson gave two different reasons for returning to Penix's house; and Anderson gave varied reports about what time he returned to Penix's house.

In an attempt to discredit Anderson, Curry asked Anderson if he was a convicted felon, which Anderson admitted. Curry then asked Anderson if he had ever given the police a false identity. The Commonwealth objected and the court dismissed the jury and conducted a hearing on the issue. During the hearing, Curry stated that he wanted to ask Anderson about an encounter Anderson had with the Harlan County Sheriff. According to Curry, the sheriff went to Anderson's house to arrest Anderson's son. In an apparent attempt to save his son, Anderson lied to the sheriff and claimed that he was the son (hereinafter "the switched identity incident").[2]

In response to questioning by the court, Curry stated that he wanted to attack Anderson's veracity in three ways. First, with evidence of the switched identity incident; second, with evidence of Anderson's reputation for veracity in

---

[2] It is clear from the record that Anderson was claiming to be someone else. It is not clear that Anderson claimed to be his own son; however, the parties indicate in their briefs that they believe that Anderson claimed to be his own son; therefore, we accept that version of what occurred.

the community; and third, with evidence that, at some earlier point in time while he was in jail, Anderson lied and said that he had fallen out of his cell's bunk bed in order to obtain medical benefits. After hearing counsel's arguments, the court noted that it was late in the day and it did not want to make a rushed decision on any of those evidentiary issues. Therefore, the court advised the parties to provide it with any research they had on those issues by the next morning. As guidance, the court noted that it would likely permit evidence of Anderson's reputation for veracity and evidence regarding the bunk bed incident but would not admit evidence of the switched identity incident unless Curry could convince it to do so. Curry then stated that he did not intend to go forward with evidence of the switched identity incident. The next morning, the court ruled that reputation evidence and evidence of the bunk bed incident would be admitted. The court then asked if there were any other outstanding issues, and both parties stated that there were not.

Curry now argues that the court erred by prohibiting him from introducing evidence of the switched identity incident, and that this issue was adequately preserved. We disagree.

A close review of the record indicates that the court made a conditional ruling that evidence of the switched identity incident was not admissible; however, the court gave Curry the opportunity to convince it otherwise. Curry chose not to avail himself of that opportunity; therefore, he waived the issue, and did not properly preserve it for our review. Because the issue was not properly preserved, we review it for palpable error. RCr 10.26.

7

> For an error to be palpable, it must be "easily perceptible, plain, obvious and readily noticeable." A palpable error "must involve prejudice more egregious than that occurring in reversible error[.]" A palpable error must be so grave in nature that if it were uncorrected, it would seriously affect the fairness of the proceedings. Thus, what a palpable error analysis "boils down to" is whether the reviewing court believes there is a "substantial possibility" that the result in the case would have been different without the error. If not, the error cannot be palpable.

*Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky. 2006)(footnotes omitted).

Curry argues that evidence of the switched identity incident was properly admissible for the purpose of attacking Anderson's credibility under Kentucky Rule of Evidence (KRE) 608(b), and the court's exclusion of that evidence impeded his fundamental constitutional right to confront Anderson "through effective cross-examination." The Commonwealth argues the evidence was properly excluded. However, we need not address whether the evidence was properly excluded because its exclusion was not palpable error.

As we begin our analysis of this issue, we note that the decision to admit or exclude specific incidents of conduct to attack credibility is wholly within the trial court's discretion. "To amount to an abuse of discretion, the trial court's decision must be 'arbitrary, unreasonable, unfair, or unsupported by sound legal principals.'" *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007) (*citing Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)).

Curry had already obtained an admission from Anderson that he was a convicted felon. The trial court permitted Curry to ask Anderson if he had lied about falling from a jailhouse bunk bed, which Anderson admitted. The trial court permitted Curry to ask the Harlan County Sheriff about Anderson's

8

reputation for untruthfulness in the community. The trial court permitted Curry to put on evidence that Anderson's version of the night's events changed a number of times. In short, the trial court permitted Curry to put on a significant amount of evidence regarding Anderson's lack of credibility. Curry has not specified that there is any possibility, let alone a substantial one, that the result would have been different if evidence of one additional incident of untruthfulness by Anderson had been admitted. Thus, he has failed to establish that exclusion of the switched identity incident rose to the level of palpable error.

### III. CONCLUSION.

For the foregoing reasons, we affirm.

Minton, C.J., Cunningham, Keller, Venters and Wright, JJ., concur. Hughes and Noble, JJ., concur in result only.


COUNSEL FOR APPELLANT:

Samuel N. Potter


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

David Wayne Barr
Assistant Attorney General