Cassandra BLANKENSHIP, Appellant

v.

COMMONWEALTH of Kentucky, Appellee

NO. 2014–CA–000562–MR

Court of Appeals of Kentucky.

RENDERED: DECEMBER 23, 2015; 10:00 A.M.

Discretionary Review denied by Supreme Court August 17, 2016

BRIEF FOR APPELLANT: Molly Mattingly, Frankfort, Kentucky

BRIEF FOR APPELLEE: Jack Conway, Attorney General of Kentucky, Courtney J. Hightower, Assistant Attorney General, Frankfort, Kentucky

BEFORE: CLAYTON, NICKELL, AND THOMPSON, JUDGES.

CLAYTON, JUDGE:

Cassandra Blankenship appeals the Boyd Circuit Court's order revoking her probation and sentencing her to five years. After careful review, we reverse and remand.

## BACKGROUND

Blankenship was indicted on November 16, 2009, on one count of first-degree trafficking in a controlled substance, first offense; one count of third-degree trafficking in a controlled substance, first offense; and, one count of possession of drug paraphernalia. On April 15, 2010, she entered a guilty plea to the charges. In exchange for the guilty plea, the Commonwealth recommended a total sentence of five years, probated for five years. Blankenship was sentenced accordingly on May 26, 2010.

On November 27, 2013, a probation and parole officer filed a violation of supervision report and requested both a probation violation warrant and also a probation revocation hearing. Blankenship was arrested that day. Following her arrest, a probation revocation hearing was held on February 28, 2014.

At the hearing, the probation and parole officer noted that Blankenship was classified as a "low risk" and subject to supervision under this protocol. The incident leading to the probation violation and arrest began when the probation officer received an anonymous phone call alleging that Blankenship was using illegal narcotics. She came into the office to be tested for drugs. Blankenship tested negative for narcotics but positive for marijuana. The probation officer gave her a warning that smoking marijuana, drinking alcohol, and not paying supervision fees were violations of probation.

After Blankenship left the office, the probation officer received a phone call, approximately 30 to 45 minutes later, from her. She had inadvertently telephoned the officer. While listening to the phone call, the officer overheard a conversation between Blankenship and an unknown male. In the conversation, she admitted to smoking marijuana after meeting with the officer and drinking alcohol the night before. And the officer heard Blankenship proclaim that a probation and parole office was not going to stop her from smoking marijuana or drinking alcohol.

Subsequently, the probation officer received another phone call about Blankenship's drug use and responded by calling her back into the office. During this meeting with the probation officer, she acknowledged the unintentional phone call, its contents, and smoking marijuana again. The probation officer also reminded her about the requirement to pay $25.00 per month for supervision. At the time of the violation report, she had not paid any supervision fees or drug testing fees in over a year, and she owed $120.00 in drug testing and $675.00 in supervision fees.

The probation officer also testified about its office's policy on graduated sanctions and discretionary detention. While he was aware that Blankenship's violations were minor violations, he explained that three minor violations equal a major violation. The officer acknowledged that under the policy for managing low level offenders, three or more minor violations require a recommendation for curfew, community service, electronic monitoring, in-treatment, residential treatment, and discretionary detention. Complicating matters was Blankenship's failure to pay her supervision fees, which escalated the seriousness of the violations. Therefore, he decided not to use graduated sanctions, but requested a revocation hearing in order to inform the trial court about Blankenship's violations.

Blankenship then testified and admitted that she had failed her drug test, smoked marijuana after she left the probation and parole office, and was behind on the supervision fees. Further, Blankenship told the trial court that she suffered from anxiety attacks, severe bipolar disorder, and had just been diagnosed with lupus. She al-

leged that marijuana helped her cope with the anxiety, but she wanted to quit smoking marijuana and needed help to do so. Additionally, Blankenship informed the trial court that she had worked at McDonald's for the last two years, and the job was still available to her if she was probated. She apologized to the probation officer for the phone call. Finally, Blankenship said that her father would pay her fees, and she would follow the requirements of probation.

At the time of the hearing, Blankenship had already been in jail 94 days awaiting the revocation hearing. Her counsel argued that she should be returned to probation with increased supervision or treatment options. Counsel also highlighted the legislative intent behind recent changes in the law regarding probation, which supported that it would be better to treat and rehabilitate Blankenship than jail her.

Following the testimony and argument, the trial court orally revoked probation. In the trial court's written order, entered on March 12, 2014, it observed that Blankenship had three violations of the terms and conditions of probation; that the Department of Corrections had followed its matrix; and that pursuant to this matrix, three minor violations equal a major violation. It noted that not only had Blankenship violated the conditions of probation but also had a previous violation and had not paid her supervision fees in over a year. These factors and the contents of the phone call persuaded the trial court that services or graduated sanctions would be of no benefit to Blankenship. Therefore, it revoked probation and sentenced Blankenship to five years' imprisonment. Blankenship now appeals the trial court's order revoking her probation.

## STANDARD OF REVIEW

The appellate standard of review of a decision to revoke a defendant's probation is whether the trial court abused its discretion. *Lucas v. Commonwealth*, 258 S.W.3d 806, 807 (Ky.App.2008). To amount to an abuse of discretion, the trial court's decision must be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky.2007), quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999). And an appellate court will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law. *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky.2004).

## ANALYSIS

Blankenship argues that the trial court abused its discretion when it revoked probation instead of imposing other sanctions. Further, she maintains that the trial court failed to make findings in accordance with Kentucky Revised Statutes (KRS) 439.3106 and failed to inquire into the reason that she did not pay her fees. The Commonwealth counters that the trial court properly revoked her probation.

KRS 439.3106 provides that:

Supervised individuals shall be subject to:

(1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or

(2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the of-

fender, and the need for, and availability of, interventions which may assist the offender to remain compliant and crime-free in the community.

■ In *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky.2014), the Kentucky Supreme Court stated that in probation revocation matters "KRS 439.3106(1) requires trial courts to consider whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and also [to address] whether the probationer cannot be managed in the community before probation may be revoked." Thus, the Court held that KRS 439.3106 does apply to trial courts and the cited factors must be considered in determining if revocation should be granted. *Id.* at 778–779. Accordingly, as authorized under KRS 439.3106 in 2011, a trial court must consider when revoking probation whether a probationer is a danger to his or her victim or the community at large and whether a probationer cannot be appropriately managed in the community.

Here, a review of both the oral ruling and the written order of the trial court shows that it never addressed whether Blankenship's failure to abide by a condition of probation posed a significant risk to prior victims or the community at large, and whether she could be appropriately managed in the community prior to revocation. The trial court observed that based on the attitude of her phone conversation that rehabilitation would not benefit her and the Commonwealth suggested that if she drove while under the influence of marijuana, she could be a danger to the community. However, we are not persuaded that these offhanded statements reach the level statutorily required.

First, no evidence was proffered that she was driving then or any time, and the trial court judge did not mention this fac-

tor in its ultimate decision. Second, the trial court mentioned, and the Commonwealth proffered, that a previous probation violation was significant to the trial court's revocation of Blankenship's probation. However, even though the trial court observed that Blankenship had a previous probation violation that resulted in her being held in contempt and serving 120 days in jail, its rendition of this fact was not related to whether she was a danger or could be properly managed in the community. Further, the first probation violation was a result of Blankenship being tested immediately after her sentencing, and it was that drug test that resulted in the probation violation. In other words, she suggested that this positive drug test occurred from activities prior to her sentencing. Finally, Blankenship's testimony at the hearing indicated that she had requested help from the probation officer to stop smoking marijuana and his response was to scoff at the idea of drug rehabilitation from marijuana.

The Commonwealth, citing *Southwood v. Commonwealth*, 372 S.W.3d 882 (Ky.App. 2012), avers that it is not necessary for the trial court to make specific findings of fact. *Southwood*, however, has been abrogated by *McClure v. Commonwealth*, 457 S.W.3d 728 (Ky.App.2015), which relied on *Andrews*. In *McClure*, our Court held that under KRS 439.3106(1) a trial court must make findings of fact concerning whether a party poses a risk to the community and is not manageable in the community. The role of the appellate court is merely to evaluate the sufficiency of the evidence and whether the trial court abused its discretion. *Id.* at 734.

We concur with *McClure*, which in applying *Andrews* made clear trial courts must consider and make findings—oral or written—comporting with KRS 439.3106(1). The written order entered in

this case did not reference the statute or its elements. Although the trial court judge's remarks from the bench that issues concerning probation were, at that time, being reviewed by the appellate courts, he made no specific mention of the statute or its elements during the brief revocation hearing.

Under *Andrews,* revoking probation without making findings on: (1) whether Blankenship's conduct constituted a significant risk to her victims or the community at large; and (2) whether she could be appropriately managed in the community, was an abuse of discretion and requires reversal and remand. *McClure,* 457 S.W.3d at 733. Moreover, given our decision, it is not necessary for us to address whether the trial court should have inquired into the reasons for Blankenship's failure to pay her supervision fees.

On remand, the trial court shall enter findings as to both elements of KRS 439.3106(1). Then, consistent with both *Andrews* and *McClure,* the trial court must conclude whether revocation or a lesser sanction is appropriate.

## CONCLUSION

The decision of the Boyd Circuit Court is reversed and remanded for the trial court's entry of further findings that comply with this opinion and KRS 439.3106.

ALL CONCUR.