RENDERED:  APRIL 16, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky
# Court of Appeals

NO. 2020-CA-1051-MR

DILLARD AKERS                                                          APPELLANT

APPEAL FROM MCCREARY CIRCUIT COURT
v.        HONORABLE DANIEL BALLOU, JUDGE
ACTION NO. 19-CR-00044

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  GOODWINE, KRAMER, AND MAZE, JUDGES.

KRAMER, JUDGE:  Dillard Akers appeals from an order of the McCreary Circuit

Court revoking his probation and imposing a sentence of three years' incarceration.

We affirm.

Akers entered a guilty plea to theft by deception ($500.00 or more) in

October 2019.  The circuit court sentenced Akers in December 2019, and pursuant

to the plea agreement, placed him on probation for a period of three years.  As

conditions of probation, Akers was required to report in-person to his probation officer at least once per month; comply with the directions of his probation officer; and remain within the area/county approved by the probation officer, among numerous other conditions.

On April 28, 2020, the Commonwealth moved to revoke Akers' probation, stating that Akers had failed to report to his probation officer, Leisa Vanhook, as directed; failed to cooperate with Vanhook; provided false information; traveled outside his area of supervision without permission; and absconded from supervision. A report and affidavit from Vanhook was filed with the circuit court. The circuit court issued an arrest warrant, and Akers was apprehended on or about May 2, 2020. The Commonwealth filed a second motion to revoke Akers' probation on the same day, stating that Akers harassed or threatened Vanhook in telephone calls after his arrest. The circuit court held a revocation hearing on July 21, 2020, and granted the Commonwealth's motion to revoke Akers' probation. This appeal followed.

"The appellate standard of review of a decision to revoke a defendant's probation is whether the trial court abused its discretion. *Lucas v. Commonwealth*, 258 S.W.3d 806, 807 (Ky. App. 2008). To amount to an abuse of discretion, the trial court's decision must be 'arbitrary, unreasonable, unfair, or unsupported by sound legal principles.' *Clark v. Commonwealth*, 223 S.W.3d 90,

95 (Ky. 2007), quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999)." *Blankenship v. Commonwealth*, 494 S.W.3d 506, 508 (Ky. App. 2015).

The scope of Akers' argument is very narrow. He asserts only that the circuit court made insufficient findings that do not comply with KRS[1] 439.3106. We disagree.

KRS 439.3106 states, in relevant part,

(1) Supervised individuals shall be subject to:

> (a) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community[.]

The Kentucky Supreme Court has held that KRS 439.3106(1) "requires trial courts to *consider* whether a probationer's failure to abide by a condition of supervision constitutes a significant risk to prior victims or the community at large, and whether the probationer cannot be managed in the community before probation may be revoked." *Commonwealth v. Andrews*, 448 S.W.3d 773, 780 (Ky. 2014) (emphasis added). The same provision also mandates that the trial court must "*find* that the probationer's failure to abide by a condition

---

[1] Kentucky Revised Statute.

-3-

of supervision constitutes a significant risk to prior victims or the community, and that the probationer cannot be managed in the community before probation may be revoked." *Id.* at 781 (emphasis added).

In the year following the *Andrews* decision, this Court provided further clarification regarding the findings required by KRS 439.3106. In *McClure v. Commonwealth*, 457 S.W.3d 728 (Ky. App. 2015), the defendant argued the circuit court's finding that he posed a significant risk was an abuse of discretion because the court offered no explanation as to why. This Court disagreed, holding,

> [t]he statute requires a trial court to consider "whether a probationer's failure to abide by a condition poses a significant risk to prior victims or the community at large." *Andrews* at 776. Neither KRS 439.3106 nor *Andrews* require anything more than a finding to this effect supported by the evidence of record. The trial court complied with this requirement and it owed McClure no further explanation.

*Id.* at 733.

In the instant action, the circuit court found,

> that while on probation [Akers] violated the terms and/or conditions detailed in the Commonwealth's Motion to Revoke, which is contained within the file, and such acts and conduct being in clear and open violation of the terms of Probation aforementioned, and the Court having considered all lesser penalties as required under KRS 439.3106, and further finds that the violations constitute a significant risk to prior victims, the community at large, and that [Akers] cannot be appropriately managed in the community[.]

-4-

The evidence of record[2] supports the circuit court's findings. Akers was sentenced to probation in December 2019. On January 3, 2020, he reported as directed, and again on February 3, 2020. He was scheduled to report again on February 6, 2020, but called Vanhook on February 10, 2020, stating he was at the hospital with possibly two broken ribs. Hospital records submitted into evidence show that Akers was seen on January 15, 2020, regarding a shoulder injury and again on February 7, 2020 (*i.e.*, the day after his scheduled report date and three days before he told Vanhook he was in the hospital). Per the records dated February 7, 2020, Akers did not have broken ribs.

Akers failed to report as scheduled on March 3, 2020, but reported on March 6, 2020, for the last time. On April 6, 2020, he began what can only be described as a pattern of dodging his reporting requirement by falsely informing Vanhook that he believed he had COVID-19. Vanhook testified Akers called her at 2:00 a.m. on the morning of April 5, 2020, and was possibly under the influence, which would have required Akers to undergo a drug test. When contact was made again during normal business hours, Akers indicated he had a fever, cough, and trouble breathing. Days went by and Akers gave numerous excuses as to why he

---

[2] The evidence contained in the record before us includes testimony of Vanhook; the violation of supervision report (Vanhook acknowledged she filed the report contained in the court record and testified as to its contents); testimony of Akers; and various exhibits entered into evidence at the revocation hearing.

was unable to get tested for COVID-19. Despite the fact Akers claimed illness, he traveled without permission to Mt. Sterling, Kentucky, and spent the night there. Vanhook believed Akers falsely reported he believed he had COVID-19 to avoid drug testing stemming from his call to her at 2:00 a.m. on April 5, 2020.

Ten days after he first reported illness to Vanhook (*i.e.*, on April 16, 2020), Akers was finally tested for COVID-19. However, he refused to answer calls from Vanhook about his test results. Akers' results were negative. Vanhook testified that, contrary to statements in text messages submitted to the court, he did not have a fever when he arrived at the clinic for testing.[3]

On April 17, 2020, a door hanger was left at Akers' residence, instructing him to contact Vanhook. He failed to do so, and he failed to return Vanhook's calls. Also, in April 2020, Akers was charged with unauthorized use of a motor vehicle in Boyle County. He was arrested on a warrant for this offense on April 20, 2020. When Akers was arrested on the probation violation warrant on May 2, 2020, both he and his mother called Vanhook multiple times after 10:00 p.m. to argue that he had not had any probation violations. Vanhook felt harassed and threatened by the calls.

---

[3] Akers signed a release of information at the clinic so that his COVID-19 test results could be reported to Vanhook.

Despite Akers' arguments to the contrary, the circuit court was not required to provide any further explanation beyond its finding that his probation violations constituted a significant risk to himself or the community at large and that he could not be appropriately managed in the community. *McClure*, 457 S.W.3d at 733. The circuit court's decision is supported by the evidence of record. Moreover, in the cases cited by Akers to this Court, the circuit court was reversed *only* when it did not include the specific language required by KRS 439.3106(1) and *Andrews*, *supra*, or when the findings were not supported by a preponderance of evidence contained in the record.[4, 5] That is not the case here.

Accordingly, the order of the McCreary Circuit Court revoking Akers' probation is affirmed.

ALL CONCUR.

---

[4] *See, e.g.*, *Helms v. Commonwealth*, 475 S.W.3d 637 (Ky. App. 2015).

[5] In the appendix of his brief to this Court, Akers attached an order revoking probation from another unrelated probation revocation of a different defendant in McCreary Circuit Court. He requests we take judicial notice of the order. However, because it is not part of the record, we shall not consider it. *See* Kentucky Rule of Civil Procedure (CR) 76.12(4)(c)(vii).

BRIEFS FOR APPELLANT:

Robert C. Yang
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Aspen Roberts
Assistant Attorney General
Frankfort, Kentucky