RENDERED:  MAY 27, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-0843-MR

BRYANT MILBY                                                        APPELLANT

APPEAL FROM WASHINGTON CIRCUIT COURT
v.        HONORABLE SAMUEL TODD SPALDING, JUDGE
ACTION NO. 19-CR-00063

COMMONWEALTH OF KENTUCKY                                  APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CETRULO, LAMBERT, AND McNEILL, JUDGES.

CETRULO, JUDGE:  Appellant Bryant Milby ("Milby") appeals from an order of

the Washington Circuit Court revoking his probation.  Having reviewed the record

and the relevant law in this case, we affirm the Washington Circuit Court.

# BACKGROUND

Milby entered a guilty plea to one count of possession of a controlled substance, first degree; two counts of wanton endangerment, first degree; one count of criminal mischief, first degree; one count of possession of drug paraphernalia; one count of operating on a suspended license; and one count of operating a motor vehicle under the influence. The facts surrounding the arrest are somewhat contested, but the circumstances of that apprehension are not crucial to our analysis; we, therefore, will not dwell on the disparities.

In June 2019, while under the influence of drugs, Milby drove a vehicle into a front yard, almost striking a home. The homeowner came out of the house and, finding Milby impaired, attempted to remove the keys from the ignition. Milby regained awareness and reversed his vehicle into a garage and/or fence, also forcing the homeowner to jump from the vehicle. The homeowner retrieved a gun and began firing at Milby's vehicle. The Commonwealth stated that the homeowner was trying to "shoot out the tires," but defense counsel stated that the windshield contained several bullet holes. At some point thereafter, Milby struck the front of the home with his vehicle, causing damage. His vehicle eventually came to a stop and Milby was found unconscious by the Washington County Rescue. After the paramedics arrived, Milby was given Narcan and revived; heroin and needles were found in his front passenger seat.

Two months later, Milby was indicted, and in February 2020 Milby pled guilty to the litany of charges previously elucidated. Originally, the Commonwealth offered a total sentence of eight years in the penitentiary, probated for five years. The trial court expressed doubt about the appropriateness of probation. The court reviewed the pre-sentence investigation ("PSI") report and in March 2020 the court accepted an amended guilty plea with a Commonwealth recommendation of six years' imprisonment, which included substance abuse treatment.

In September 2020, Milby filed a motion for shock probation. At that hearing, the facts from the citation were challenged by defense counsel for the first time. The trial court granted the motion for shock probation and included, as a condition, that Milby complete an outpatient drug treatment program. Milby was released on September 24, 2020.

On February 2, 2021, the Commonwealth filed a motion to revoke Milby's probation. According to the Commonwealth, "Milby had violated the conditions of his probation by absconding from supervision, concealing his whereabouts from his probation officer, and failing to seek a substance abuse evaluation." A bench warrant was issued on February 3. Milby was finally arrested on May 11.

In June 2021, a probation revocation hearing was scheduled. At the onset of the hearing, defense counsel advised the court that Probation and Parole offered a sanction that Milby was prepared to accept. However, the court refused the resolution and proceeded with the hearing. Thereafter, probation officer Chris Wilkinson ("PO Wilkinson") testified that his last contact with Milby was a phone call on December 21, 2020, in which Milby told PO Wilkinson that he had been hospitalized, but that he was currently trying to get his job back. PO Wilkinson told Milby to report to his office the next day, but Milby did not do so. PO Wilkinson testified that between December 29 and January 4, 2021, he attempted to contact Milby three more times, but did not make contact nor receive a return call from Milby. On January 8, PO Wilkinson made contact with Milby's employer and determined he was still employed there. He asked Milby's employer to relay a request for Milby to call him, but Milby did not call. On February 2, PO Wilkinson attempted to make a home visit at Milby's last reported address, but Milby's father told him that he no longer lived there and did not have a current address for him. PO Wilkinson testified that Milby only reported one time after his release in September, had one phone contact with him in December, and that Milby missed his substance abuse evaluation appointment on January 5.

Milby then testified that he was in the hospital with kidney stones and other ailments for over a month in late 2020, but that he spoke to PO Wilkinson on

-4-

the phone "several times." On the day that Milby was due to report in person, presumably December 22, Milby's father was hospitalized and Milby had no way to get to the Probation and Parole office.[1] Milby said he had no knowledge of the evaluation scheduled for January 5. Milby admitted he was not current on his reporting, but stated that he had stable employment and had worked to improve his life since his release. His counsel pointed out that this was Milby's first time before the court since his release, and he was not charged with any crime.

After this testimony, the court described Milby's criminal history as "terrible" and "horrific." The court pointed out that Milby "knew he was under a zero-tolerance policy" after receiving shock probation. Additionally, the court expressed frustration at the fact that Milby only reported one time to PO Wilkinson since being granted shock probation, despite the fact that "it's never been easier" to be monitored by Probation and Parole as it has been during the COVID-19 pandemic. The court then concluded on the record:

> [Milby] cannot be managed by Probation and Parole. It's clear as a bell. He will not show up. Simple as that. I mean, it took us a long time to find him too. Let's . . . throw that out there. He was on the lam for almost five months on this particular deal . . . really almost, almost, yeah it's about five months . . . is about what it was before he was actually picked up on this case. And, further concerning, I also believe he poses an extreme risk to the community and a risk of future criminal behavior because his past criminal record speaks volumes

---

[1] Milby did not have a valid driver's license at the time.

toward that.  So based on all those factors, I'm not going to impose a sanction in this case.  I don't think one's appropriate.  I think based upon the facts of this case and how serious it was… I think based upon his terrible criminal history, I think based upon the fact that he's just not going to show up, I will not impose a sanction. Probation is revoked.  I'm going to impose a sentence of six years.

This appeal followed.

## STANDARD OF REVIEW

As stated in *Blankenship v. Commonwealth*, 494 S.W.3d 506, 508 (Ky. App. 2015):

> The appellate standard of review of a decision to revoke a defendant's probation is whether the trial court abused its discretion. *Lucas v. Commonwealth*, 258 S.W.3d 806, 807 (Ky. App. 2008).  To amount to an abuse of discretion, the trial court's decision must be "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Clark v. Commonwealth*, 223 S.W.3d 90, 95 (Ky. 2007), quoting *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).  And an appellate court will not hold a trial court to have abused its discretion unless its decision cannot be located within the range of permissible decisions allowed by a correct application of the facts to the law. *Miller v. Eldridge*, 146 S.W.3d 909, 915 (Ky. 2004).

## ANALYSIS

In 2014, the Supreme Court of Kentucky addressed the applicability of KRS[2] 439.3106 to trial courts when determining if probation revocation is appropriate. *Commonwealth v. Andrews*, 448 S.W.3d 773, 776 (Ky. 2014).

> In 2011, the Kentucky General Assembly enacted the Public Safety and Offender Accountability Act, commonly referred to as House Bill 463 ("HB 463"). 2011 Ky. Acts 4. With the enactment of HB 463, the legislature adopted a sentencing policy intended to "maintain public safety and hold offenders accountable while reducing recidivism and criminal behavior and improving outcomes for those offenders who are sentenced." KRS 532.007(1). To that end, HB 463 created several new statutes, including various statutes governing probation and conditional discharge. Among the newly enacted probation and parole statutes was KRS 439.3106, which provides as follows:
>
> Supervised individuals shall be subject to:
>
> > (1) Violation revocation proceedings and possible incarceration for failure to comply with the conditions of supervision when such failure constitutes a significant risk to prior victims of the supervised individual or the community at large, and cannot be appropriately managed in the community; or
> >
> > (2) Sanctions other than revocation and incarceration as appropriate to the severity of the violation behavior, the risk of future criminal behavior by the offender, and the need for, and availability of, interventions

---

[2] Kentucky Revised Statute.

which may assist the offender to remain compliant and crime-free in the community.

Here, Milby's argument is two-fold. First Milby argues that the check-box format of the revocation order did not qualify as sufficient findings of fact. He argues that "there is no written explanation on the form order for what evidence related to [Milby] being a significant risk or unmanageable." Second, when taking into account the *oral* record, he argues the court erred by only proving unmanageability, but not that Milby was a significant risk to the community. Specifically, he argues the court failed to provide a "clarification on how [Milby's] criminal history or facts of his offense have any nexus to be a significant risk to the community." He argues such failures violate KRS 439.3106(1) and *Andrews*, thereby constituting an abuse of discretion.

First, the Kentucky Supreme Court recently elucidated what constituted adequate findings of fact during a probation revocation.

> We acknowledge that "perfunctorily reciting the statutory language in KRS 439.3106 is not enough." *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015). Rather, "[t]here must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met." *Id.*
>
> These findings can be either oral or written to satisfy both KRS 439.3106(1) and the defendant's due process rights. *See Commonwealth v. Alleman*, 306 S.W.3d 484, 487 (Ky. 2010) (finding that a defendant's due process rights not violated by oral findings during revocation

hearing); *see also Andrews*, 448 S.W.3d at 780 (holding trial court's "oral findings" were enough to satisfy KRS 439.3106). Although not explicitly discussed in either *Alleman* or *Andrews*, implicit in their holdings is the notion that we look to both the written and oral findings in conjunction with one another and not separately in a vacuum. Therefore, we must look at the trial court's findings – both in open court and in its written order – to determine whether KRS 439.3106(1) and due process requirements were met.

*Commonwealth v. Gilmore*, 587 S.W.3d 627, 630 (Ky. 2019).

Accordingly, the court needed to find, either written or orally, that (1) Milby violated the terms of his release, (2) he was unmanageable by Probation and Parole, and (3) he was a significant risk to the community.

First, the court found that Milby violated the terms of his shock probation when he absconded and failed to complete the assessment for substance abuse treatment; the court indicated this on the written revocation order.

Second, the court found that Milby was unmanageable because he failed to report to PO Wilkinson and remained on the lam for approximately five months; the court stated these facts on the record during the revocation hearing.

Third, the most contested argument, is whether the court properly found that Milby constituted a significant risk to the community. The trial court addressed this on both the written and oral record. On the revocation order, the trial court put a checkmark next to the statutory language indicating that Milby was a "significant risk to the community." There was an additional checkmark

-9-

indicating that the court believed Milby was a "high risk of future criminal behavior."

The use of preprinted forms alone – without additional oral findings – is insufficient to meet the mandatory statutory findings necessary to revoke a defendant's probation. *Walker v. Commonwealth*, 588 S.W.3d 453, 459 (Ky. App. 2019). Accordingly, we again turn to the oral record. At the revocation hearing, the court clearly stated that Milby posed "an extreme risk to the community and a risk of future criminal behavior because his past criminal record speaks volumes toward that." The record shows that the court repeatedly referred to Milby's "terrible criminal history," which included traffic violations, drug-related offenses, fleeing or evading police, wanton endangerment, criminal mischief, theft, escape and flagrant nonsupport. While Milby's criminal history cannot be the only basis for revocation, it may be considered as a factor. *Andrews*, 448 S.W.3d at 780.

Additionally, the trial court considered Milby's admitted drug addiction, an addiction going further untreated as he absconded, thereby missing his scheduled drug treatment and/or evaluation. Moreover, the trial court discussed the seriousness of the underlying crime: Milby "rammed" a house, caused extensive damage, almost hit the homeowner, all after using heroin and fentanyl. In total, the assessment of these circumstances (absconding, drug abuse, criminal history, and the seriousness of past errors) fall under the discretion of the trial

court. "While HB 463 reflects a new emphasis in imposing and managing probation, it does not upend the trial court's discretion in matters of probation revocation, provided that discretion is exercised consistent with statutory criteria." *Id.*

Furthermore, even though "[t]he statute requires a trial court to consider whether a probationer's failure to abide by a condition poses a significant risk to prior victims or the community at large[,] [n]either KRS 439.3106 nor *Andrews* require anything more than a finding to this effect supported by the evidence of record." *McClure v. Commonwealth*, 457 S.W.3d 728, 733 (Ky. App. 2015) (internal quotation marks and citation omitted). KRS 439.3106(1)(a) does not require a probationer to commit "some heinous act before he can be found to be a risk to someone other than himself." *Id.* In *McClure*, for example, a probationer's attempt to cheat on a drug test was deemed sufficient for revocation purposes. There,

> McClure was convicted of burglary and theft of a controlled substance; he was granted the privilege of probation; he used a controlled substance in violation of the terms of that probation and was subjected to further, more frequent testing. In response to this increased supervision, he went to great lengths to undermine the efforts of those supervising him by carrying someone else's urine in a syringe concealed in his pants.

*Id.  See also Embry v. Commonwealth*, 561 S.W.3d 360 (Ky. App. 2018) (affirming revocation where probationer willfully and repeatedly failed to pay child support).

Probation is a form of supervised release.  If a probationer is unwilling to be supervised and instead undermines the process, then probation serves no purpose.  *Gipson v. Commonwealth*, No. 2019-CA-0849-MR, 2022 WL 727304, at *3 (Ky. App. Mar. 11, 2022).[3]  In conjunction with its remarks during the revocation hearing, the trial court's written order shows that the court considered all the evidence and the specific requirements of KRS 439.3106(1) before deciding to revoke Milby's probation.  This decision was supported by the evidence of record, and thus, the trial court did not abuse its discretion.

## CONCLUSION

We find that the trial court specifically considered KRS 439.3106(1) when it made oral and written findings revoking Milby's probation.  Additionally, these findings were supported by the evidence of record.  Thus, no abuse of discretion occurred, and we AFFIRM the Washington Circuit Court.

ALL CONCUR.

---

[3] Kentucky Rule of Civil Procedure 76.28(4)(c) states that unpublished opinions are not binding precedent but may be used as persuasive authority.

BRIEF FOR APPELLANT:

Jennifer Wade
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Courtney J. Hightower
Assistant Attorney General
Frankfort, Kentucky