RENDERED: FEBRUARY 27, 2026; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0602-MR

HASAN SAXTON          APPELLANT

v.
         APPEAL FROM GRAVES CIRCUIT COURT
HONORABLE KEVIN D. BISHOP, JUDGE
ACTION NO. 20-CR-00178

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: CALDWELL, McNEILL, AND TAYLOR, JUDGES.

CALDWELL, JUDGE: Hasan Saxton ("Saxton") appeals from the revocation of his probation. We affirm.

## FACTS

In 2020, Saxton was indicted on charges including first-degree strangulation, tampering with physical evidence, and being a persistent felony offender (PFO) in the Graves Circuit Court. Saxton was also charged with

misdemeanors including fourth-degree assault/domestic violence, possession of drug paraphernalia, and possession of marijuana.

The case proceeded to a jury trial. Saxton was found guilty of first-degree strangulation, tampering with physical evidence, and being a second-degree PFO. He was also convicted of the misdemeanor charges of fourth-degree assault/domestic violence and possession of marijuana and drug paraphernalia. Saxton was sentenced to twenty years' imprisonment.

Saxton appealed to our Supreme Court. Our Supreme Court affirmed in part, reversed in part, and remanded the case to the trial court for further proceedings. *See Saxton v. Commonwealth*, 671 S.W.3d 1 (Ky. 2022), *reh'g denied* (Apr. 27, 2023).

After the case was remanded back to the trial court, Saxton accepted a plea offer from the Commonwealth. The plea offer was subject to the condition that Saxton have no contact with the victim. The offer indicated the tampering with physical evidence charge would be dismissed in accordance with the Supreme Court opinion. The offer also stated that PFO charges were dismissed, and that Saxton had already served his sentences for his misdemeanor convictions.

Saxton filed a motion to enter a guilty plea to first-degree strangulation pursuant to *North Carolina v. Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970). The trial court accepted this plea and entered judgment

accordingly.  It sentenced Saxton to ten years' imprisonment to be probated for a maximum of five years.  It ordered that Saxton have no contact with the victim.

Saxton was released on probation in July 2023.  The order of probation, entered July 10, 2023, required that Saxton report to his probation officer as directed and comply with the conditions of probation.  It also required that Saxton commit no new offenses and initiate no contact with the victim.

In September 2023, Saxton's probation officer filed two violation of supervision (VOS) reports.  One report noted that on August 1, 2023, Saxton admitted to having used cocaine and marijuana on or about July 4, 2023.  The other report stated Saxton admitted to having physical contact with the victim.  The probation officer further reported that Saxton was currently enrolled in a six-month treatment program for substance use issues.

Shortly thereafter, the Commonwealth filed a motion to revoke probation.  The trial court held a hearing on this motion in October 2023.  At the end of the hearing, the court orally found, by a preponderance of the evidence, that Saxton violated the court's order and the terms of his probation by having contact with the victim.  However, the court declined to revoke probation.  Instead, it ordered that Saxton wear an ankle monitor for thirty days as a sanction.

The judge orally indicated that Saxton's seeking substance abuse treatment was a factor in the court's declining to revoke probation.  After noting

that probation was frequently revoked for illicit substance use, the judge orally admonished Saxton to seek his probation officer's help for any substance abuse issues before problems arose. The judge stated he did not want to see Saxton failing drug tests and he urged Saxton to comply with all terms of his probation. The court's written order noted the finding of a violation due to having contact with the victim,[1] the thirty-day ankle monitor sanction, and the requirement that Saxton comply with all terms of his probation.

A few weeks after the first motion to revoke was resolved, the Commonwealth filed another motion to revoke in late November 2023. It attached to its motion another VOS report filed by Saxton's probation officer. The report stated that Saxton had admitted to using marijuana in mid-November 2023.

On November 29, 2023, the trial court ordered that a bench warrant for Saxton's arrest be issued. Saxton was served with the warrant and released on bond on December 1, 2023.

On December 4, 2023, the Commonwealth filed a notice of additional grounds for revoking probation. It attached a new VOS report, which was dated December 1, 2023. The report stated that when police officers served Saxton with

---

[1] The trial court made no finding in its October 2023 revocation order that Saxton violated his probation terms due to substance use. Perhaps it declined to find a probation violation because some evidence indicated that Saxton's use of cocaine and marijuana in the summer of 2023 occurred before his release on probation.

the warrant for probation violation, they smelled alcohol "on his person." (Record on Appeal ("R."), p. 529.) This report also stated that Mayfield police officers were dispatched to Saxton's residence for a domestic disturbance between Saxton and his girlfriend that same day.

In January 2024, the parties agreed to continue the revocation hearing until late February 2024. A few days before the scheduled hearing, the Commonwealth filed another notice of filing of additional grounds for revocation. It attached a Warrant of Arrest/Complaint Warrant from Hickman County.

The Hickman County warrant stated that a Hickman County sheriff's deputy noticed a vehicle with front-end damage off the roadway of U.S. 45 on February 12, 2024. The warrant further noted the vehicle was registered to Mayfield/Graves County resident Wendee Morris ("Morris"), who had contacted police earlier that day for help locating her vehicle after Saxton borrowed the vehicle and then refused to respond to her inquiries about where he was. The warrant noted the Hickman County sheriff's deputy had spoken with a Mayfield police officer, who reported speaking with Saxton and being told Saxton had a wreck on U.S. 45 and did not know what to do so Saxton left the car to find someone to move it.

After the case was continued again due to the new allegations, the trial court held a revocation hearing in late April 2024. Two Mayfield police officers

who had served Saxton with an arrest warrant and/or responded to multiple calls about the domestic disturbance at Saxton's residence testified for the Commonwealth. Both officers testified to smelling alcohol on Saxton's breath. The sheriff's deputy from Hickman County who located the vehicle on the side of the road in February 2024 also testified for the Commonwealth.

The Commonwealth also presented the testimony of Saxton's probation officer and Morris. The probation officer testified he had clearly informed Saxton of the terms of probation, which included no consumption of alcohol or illicit drugs and an obligation to inform the probation officer of any contact with law enforcement within 72 hours. He testified to Saxton's failing to inform him of the February 2024 encounter with police within 72 hours and of Saxton's admitting to using marijuana in mid-November 2023.

Morris testified to being in a relationship with Saxton at the time of the hearing as well as during the December 2023 domestic disturbance incident. She stated Saxton had not been drinking and did not have alcohol in the house, and that she had thrown alcoholic beverages at him before police arrived at the residence in December 2023. Saxton did not testify or call any other witnesses.

At the end of the hearing, the trial court judge orally found that Saxton had violated the terms of his probation by using alcohol, being charged with a new offense, and using marijuana. The judge noted that Morris testified that Saxton

had not been drinking but that he smelled like alcohol when police encountered him at his residence because Morris had thrown alcoholic beverages at him. But the judge also took note that two police officers testified to smelling alcohol on Saxton's breath, which led them to believe Saxton had been drinking. The judge indicated he found the officers' testimony credible and accorded great weight to it. The judge also noted Saxton had admitted to using marijuana and that Saxton had been charged with a new offense. The judge stated that the court would revoke Saxton's probation this time since Saxton had again violated the terms of his probation after being offered a second chance following the first violation.

The trial court entered a written order finding, by a preponderance of the evidence, that Saxton had violated the terms of his probation—specifically, by using alcohol, by obtaining a new criminal charge, and by using marijuana. The court further found in its written order that Saxton's failure to comply with the conditions of his supervision amounted to "a significant risk to the community at large which cannot be appropriately managed in the community" and that "there is no sanction short of revocation and incarceration that would be appropriate." (Revocation Order attached to the Appendix to appellant red brief, p. 2) (R., p. 564). So, the court revoked Saxton's probation and remanded him to the Department of Corrections to serve out the remainder of his sentence.

Saxton filed a timely appeal from the revocation of his probation.

Further facts will be set forth as necessary in our analysis.

## ANALYSIS

KRS[2] 439.3106(1) states:

Supervised individuals shall be subject to:

(a) Violation revocation proceedings and possible
   incarceration for failure to comply with the conditions
   of supervision when such failure constitutes a
   significant risk to prior victims of the supervised
   individual or the community at large, and cannot be
   appropriately managed in the community; or

(b) Sanctions other than revocation and incarceration as
   appropriate to the severity of the violation behavior,
   the risk of future criminal behavior by the offender,
   and the need for, and availability of, interventions
   which may assist the offender to remain compliant
   and crime-free in the community.

Construing KRS 439.3106(1), our Supreme Court has held that a trial

court must make two findings before revoking probation:  1) "that the

probationer's failure to abide by a condition of supervision constitutes a significant

risk to prior victims or the community" and 2) "that the probationer cannot be

managed in the community[.]"  *Commonwealth v. Andrews*, 448 S.W.3d 773, 781

---

[2] Kentucky Revised Statutes.

-8-

(Ky. 2014).[3] Such findings can be made orally or in writing, but they must be supported by evidence in the record. *See generally Commonwealth v. Gilmore*, 587 S.W.3d 627, 631 (Ky. 2019).

## Standard of Appellate Review

We review the revocation of probation for abuse of discretion. *Blankenship v. Commonwealth*, 494 S.W.3d 506, 508 (Ky. App. 2015). *See also Commonwealth v. Lopez*, 292 S.W.3d 878, 881 (Ky. 2009).

Saxton contends the trial court abused its discretion in revoking his probation. Moreover, his brief contends that the evidence presented does not support the trial court's findings that 1) Saxton violated his probation and 2) he "did so in such a way that he cannot be successfully supervised in the community or indicated he was a danger to the public or his victim."

## Evidence Supports Trial Court's Finding of at Least One Probation Violation

First, we address whether the evidence presented supported the trial court's finding that Saxton violated his probation. Again, the trial court specifically found Saxton violated his probation by using marijuana and alcohol and by being charged with a new offense.

---

[3] As Saxton states on page 8 of his appellant red brief, "KRS 439.3106 has had multiple modifications since its enactment in 2011, and the decision in *Andrews* [448 S.W.3d 773], but its core language applicable to this case has remained the same."

Saxton contends there was insufficient evidence that he consumed alcohol. He points to Morris' testimony that he did not drink any alcohol and that she threw alcoholic beverages on him. He emphasizes the lack of evidence of breathalyzer or blood alcohol testing, and the police officers' admission that Morris was not charged with public intoxication. He also contends the evidence was insufficient to show that he committed the offense of leaving the scene of the accident, noting evidence the vehicle was not damaged from his driving it[4] and the fact he has no control over whether an officer thinks there is probable cause to charge him. And despite his probation officer's testimony that Saxton did not report encounters with police within 72 hours as required by his probation terms, Saxton's brief notes his probation officer "admitted he was aware of Saxton's interactions with police over the domestic issues having become involved himself, and that he was in court when Saxton was arrested on the leaving the scene of an accident charge."

Nonetheless, Saxton does not deny that he admitted to using marijuana. And his probation officer testified about Saxton's positive test and admission to using marijuana in November 2023. Saxton has not disputed that

---

[4] Morris testified that the vehicle was flooded but not permanently damaged when Saxton drove it in February 2024 and hydroplaned. She also testified that she did not know what condition the vehicle was in when it was located by police. However, the front-end damage seen by law enforcement (which perhaps contributed to the leaving the scene charge) was due to a prior accident and not to the February 2024 hydroplaning incident according to Morris' testimony.

marijuana use was prohibited under the terms of his probation. Moreover, "whether the trial court revoked upon one violation or three is of no consequence to the appellant so long as the evidence supports at least one violation." *Messer v. Commonwealth*, 754 S.W.2d 872, 873 (Ky. App. 1988).[5] Clearly, the evidence undisputably showed that Saxton violated the terms of his probation by using marijuana following his release on probation.

Furthermore, although Morris testified that Saxton did not drink alcohol and that she threw alcoholic beverages on him before his encounter with police, other evidence supported the trial court's finding that Saxton consumed alcohol—including two police officers' testimony about smelling alcohol on Saxton's breath and believing he had consumed alcohol despite his not appearing to be manifestly under the influence. In fact, the trial court orally noted Morris' conflicting testimony but indicated it found the officers' testimony about smelling

---

[5] To the extent that *Messer*, 754 S.W.2d 872, suggests that a properly supported finding of a probation violation is by itself enough to show a trial court did not abuse its discretion in revoking probation, this is no longer true following the adoption of KRS 439.3106—which requires findings for revocation that the defendant poses a significant risk to the victim or the public and that the defendant cannot be properly managed in the community. *See generally Helms v. Commonwealth*, 475 S.W.3d 637, 641-43 (Ky. App. 2015). *See also Brann v. Commonwealth*, 469 S.W.3d 429, 431-33 (Ky. App. 2015). *Compare Lucas v. Commonwealth*, 258 S.W.3d 806, 807-08 (Ky. App. 2008) (citing *Messer*, 754 S.W.2d at 873) ("Generally, a trial court's decision revoking probation is not an abuse of discretion if there is evidence to support at least one probation violation."). Obviously, *Lucas* and *Messer* predate the adoption of KRS 439.3106. Nonetheless, KRS 439.3106 does not specifically require that a trial court find multiple probation violations to revoke probation.

alcohol on Saxton's breath more credible and of greater weight than Morris' testimony.

Precedent from our Supreme Court has made clear that appellate courts must give due regard to the fact-finder's unique opportunity to determine witness credibility and weigh the evidence:

> it has long been held that the trier of fact has the right to believe the evidence presented by one litigant in preference to another. The trier of fact may believe any witness in whole or in part. The trier of fact may also take into consideration all the circumstances of the case, including the credibility of the witness.

*Miller v. Commonwealth*, 283 S.W.3d 690, 699 (Ky. 2009) (citations omitted). *See also Commonwealth v. Graham*, 586 S.W.3d 754, 768-69 (Ky. App. 2019) (declining to re-weigh evidence because the trial court is in the best position to weigh the evidence and determine witness credibility).

We recognize the Commonwealth does not challenge Saxton's assertions that police did not subject him to a breathalyzer or blood alcohol testing and did not charge him with public intoxication. We also recognize that Morris testified to Saxton's not drinking and to her throwing alcoholic beverages on him. Nonetheless, especially given the deference we must extend to the trial court's assessments of credibility and the weight of the evidence, we cannot say the finding of a violation based on alcohol use was not supported by evidence. The police officers who encountered Saxton at his home in December 2023 testified to

-12-

smelling alcohol on his breath and to believing he had consumed alcohol, and the trial court had the prerogative to determine witness credibility and the weight of the evidence.

Thus, regardless of whether the evidence supports the findings of a probation violation related to the leaving the scene charge,[6] evidence supports the trial court's finding that Saxton violated the terms of his probation by using marijuana and alcohol. Indeed, the evidence is undisputed that Saxton admitted to using marijuana in mid-November 2023—just weeks after Saxton had first been found to be in violation of probation and orally warned by the trial court that using illicit[7] substances could result in revocation. Moreover, Saxton has not disputed

---

[6] Saxton asserts that although a conviction is not necessary to show a probationer committed a new offense, the trial court must find by a preponderance of the evidence that the probation **committed** a new offense to support revocation based on a new offense. *See Barker v. Commonwealth*, 379 S.W.3d 116, 123 (Ky. 2012):

> KRS 533.030(1) states that "[t]he court shall provide as an explicit condition of every sentence to probation or conditional discharge that the defendant not commit another offense during the period for which the sentence remains subject to revocation." The accompanying 1974 Kentucky Crime Commission/LRC Commentary notes, "The last sentence of subsection (1) is added so that there can exist no doubt but that commission of another offense while probation or conditional discharge exists is reason for revocation of such a sentence." Notably, the Commentary refers to the "*commission* of another offense" but not the *charge* or *conviction* of another offense.

(Emphasis in original) (footnote omitted).

[7] Saxton has not alleged that his admitted use of marijuana in 2023 was for medical purposes. Moreover, recent legislation de-criminalizing medical marijuana under certain specified conditions had not taken effect prior to Saxton's admitted use of marijuana in 2023. *See* KRS 218B.015 (effective Jul. 1, 2024); KRS 218A.1422 (effective Jul. 1, 2024).

-13-

that he was forbidden from using marijuana and alcohol under the terms of his probation. In sum, we discern no reversible error in the trial court's finding that Saxton violated the terms of his probation.

Next, we address Saxton's allegations of error about the trial court's findings that he posed a significant risk of danger to the public and could not be successfully managed in the community.

**Trial Court Found that Saxton's Violation of Probation Showed a Significant Risk of Danger to the Public and Indicated Saxton Cannot Be Successfully Supervised in the Community and These Findings Are Supported by Evidence**

In addition to arguing the evidence did not support a finding that Saxton committed a new offense by leaving Morris' vehicle off the roadway in February 2024, Saxton suggests the facts surrounding this incident do not show he posed a significant risk to the public or was unmanageable in the community. *See* KRS 439.3106(1). He points out that even if the charge itself was a technical probation violation, there was no evidence that he left Morris' car blocking the roadway or in a manner interfering with other motorists' safety—especially since the car was not on fire or creating a safety hazard. He also asserts there was no evidence he was intoxicated, driving dangerously, or fleeing to avoid police during this February 2024 incident.

Saxton asserts any violations of probation were minor and that he cooperated with his probation officer and followed the probation officer's

directions. So, he contends there is nothing to support the trial court's finding that he posed a significant risk to the public and was not manageable in the community. He points out in his reply brief that the Commonwealth does not identify any specific finding by the trial court stating how the violations it found showed Saxton posed risks to the public and was unmanageable in the community. He argues the violations found do not support the trial court's findings that he posed a risk to the community or could not be managed in the community. He contends the trial court abused its discretion by finding he was a danger to the community "without making specific findings as to how the violations it found Saxton committed indicated he was a significant risk to prior victims or the community or that he was unmanageable in the community."

We disagree with Saxton's arguments that the trial court's KRS 439.3106 findings were insufficient and that there is no evidence to support them.

The trial court made the statutorily required findings. It was not required to explain its KRS 439.3106 findings but simply to make such findings supported by evidence of record. *Kendrick v. Commonwealth*, 664 S.W.3d 731, 734 (Ky. App. 2023) (citing *New v. Commonwealth*, 598 S.W.3d 88, 90 (Ky. App. 2019)). Moreover, like the trial court in *Kendrick*, the trial court provided detail by specifically identifying the violations in its revocation order. *See* 664 S.W.3d at 734.

-15-

As we explained in *Kendrick*, precedent about how perfunctory recitation of the statutory language in KRS 439.3106(1) is insufficient has often been misconstrued. 664 S.W.3d at 735.

Detailed explanations are not required. Instead, findings of the statutory requirements in KRS 439.3106(1) which are supported by the evidence suffice even if these findings appear to simply restate the statutory language:

> Kendrick relies on our often misconstrued statement in another published case that "perfunctorily reciting the statutory language in KRS 439.3106 is not enough." *Helms v. Commonwealth*, 475 S.W.3d 637, 645 (Ky. App. 2015). Perhaps our language about perfunctory recitations was imprecise, but *Helms* does not afford Kendrick relief.
>
> In *Helms*, we explained that there was "a complete lack of evidence" that Helms was "a danger to a prior victim or to the community and he cannot be appropriately managed in the community . . . ." *Id.* We stressed the insufficient evidence, notwithstanding the trial court's perfunctory regurgitation of the findings required by KRS 439.3106:
>
>> If the penal reforms brought about by HB [House Bill] 463 are to mean anything, perfunctorily reciting the statutory language in KRS 439.3106 is not enough. There must be proof in the record established by a preponderance of the evidence that a defendant violated the terms of his release and the statutory criteria for revocation has been met.
>
> *Helms*, 475 S.W.3d at 645.

-16-

In other words, we cannot affirm the revocation of probation simply because the revocation order contains the requisite statutory findings. A revocation unsupported by evidence of record would not be "within the range of permissible decisions allowed by a correct application of the facts to the law." *McClure*,[8] 457 S.W.3d at 730. Instead, we may affirm a decision to revoke probation only if: a) the court made the required findings, *and* b) those findings are supported by the record. We emphatically reiterate that *Helms* does not mean that a court must provide detailed explanations for the findings required by KRS 439.3106. *New*, 598 S.W.3d at 90 ("New's seeming argument to the contrary notwithstanding, we did not require detailed findings in *Helms* . . . .").

*Kendrick*, 664 S.W.3d at 735 (emphasis in original).

To be clear, we do not affirm the revocation simply because the trial court made the statutorily required findings. Despite any appearance that the trial court's finding of KRS 439.3106(1) requirements simply regurgitated this statutory subsection's language, the trial court identified the probation violations with specificity and evidence supports its findings that Saxton posed a significant risk to the public and could not be appropriately managed in the community. *See Kendrick*, 664 S.W.3d at 734-35.

In determining whether a probationer poses a significant risk to others or cannot be appropriately managed in the community, trial courts may properly consider factors including the seriousness of one's criminal history and any prior

---

[8] *McClure v. Commonwealth*, 457 S.W.3d 728 (Ky. App. 2015).

-17-

lack of success with probation. *Andrews*, 448 S.W.3d at 778, 780. After all, KRS 439.3106 was passed to make sure that revocation and incarceration are not imposed upon probationers who do not pose risks to others and are manageable in the community such that lesser sanctions for violations will suffice. *Id*. at 777-80. In other words:

> By requiring trial courts to determine that a probationer is a danger to prior victims or the community at large and that he/she cannot be appropriately managed in the community before revoking probation, the legislature furthers the objectives of the graduated sanctions schema to ensure that probationers are not being incarcerated for minor probation violations.

*Id*. at 779.

Here, the trial court had already imposed a lesser sanction (ankle monitoring) after finding a previous violation. Nonetheless, Saxton continued to violate the conditions of his probation even after being found in violation, receiving a lesser sanction, and being orally warned of the risks of future non-compliance. The trial court, in short, followed the procedure envisioned by the General Assembly in enacting KRS 439.3106, Saxton's arguments to the contrary notwithstanding.

Moreover, while revoking probation based solely on prior criminal history or a single failed drug test may be an abuse of discretion, a trial court may

-18-

still properly find a probationer to pose significant risks to others or to be incapable of proper management in the community based on a combination of such factors:

> If the trial court had based its decision solely on Andrews's violation of the condition that he remain drug-free, we would have had to deem that decision an abuse of discretion under the new state of the law. However, the trial court plainly considered a variety of factors, and specifically considered the criteria in KRS 439.3106. The trial court found that Andrews's recent drug use and past history strongly suggested that he was at great risk of reoffending and committing future drug crimes in the community., [sic] While Andrews's criminal history could not be the sole basis for his revocation, it was appropriately considered when assessing the risk posed by his continued probation.

*Andrews*, 448 S.W.3d at 780.

Based on the trial court judge's oral statements, Saxton's pattern of repeated violations led it to conclude that revocation was necessary. In addition to finding multiple violations at the April 2024 hearing, the trial court noted Saxton had been "given more than one opportunity" to comply—obviously alluding to Saxton's receiving a lesser sanction rather than revocation for the prior violation. (Video recording 4/23/2024 1:03:05-1:03:08.) Though perhaps more detail in the trial court's oral and written findings about KRS 439.3106(1) requirements would have been preferable, the repeated pattern of violations noted by the trial court

supported its written finding that Saxton posed a significant risk to the public and could not be successfully managed in the community.[9]

In fact, the trial court had previously found Saxton in violation of the condition that he have no contact with the victim yet allowed Saxton a second chance to stay on probation rather than go back to prison. Moreover, when previously imposing lesser sanctions (ankle monitor use) rather than revocation, the judge had specifically warned Saxton that illicit substance use was a serious matter and could result in revocation.

Furthermore, the record reflects that multiple other violations occurred just months after the first violation—in fact, all violations found by the trial court happened within one year of Saxton's July 2023 release on probation.

---

[9] Saxton argues on page 9 of his appellant red brief:

> Due process requires that a trial court make findings as to "the evidence relied on and the reasons for revoking probation." *Commonwealth v. Alleman*, 306 S.W.3d 484, 487-88 (Ky. 2010) (referencing *Morrissey v. Brewer*, 408 U.S. 471 (1972) and its progeny).

*Alleman* predates the adoption of KRS 439.3106 in 2011, and certainly indicates that a trial court should at least identify with some specificity the basis for its determination that a violation occurred. *Id.* at 487-88. However, more recent precedent makes clear that even terse KRS 439.3106 findings which appear to simply regurgitate statutory language do not call for reversal of revocation so long as the required statutory findings are made and are supported by the record. *See Kendrick*, 664 S.W.3d at 735; *McClure*, 457 S.W.3d at 733-34; *Gilmore*, 587 S.W.3d at 630-31; *New*, 598 S.W.3d at 90.

In any event, the trial court did not fail to inform Saxton of the evidence it relied upon or the reasons for its revoking probation.

Specifically, evidence of record shows that, mere months after violating the court's order prohibiting contact with the victim, Saxton further violated the terms of his probation by using marijuana and alcohol and by failing to timely report encounters with police. Considering this evidence of repeated failure to comply with the terms of his supervision, the trial court understandably rejected Saxton's assertion that he could be successfully managed in the community.

Regardless of whether one accepts Saxton's assertion that his latest violations were minor in nature, the occurrence of multiple violations close in time can indicate that a person simply will not comply with the conditions of supervision and thus poses risks to others and cannot be successfully managed in the community. *See Compise v. Commonwealth*, 597 S.W.3d 175, 182 (Ky. App. 2020) ("These instances of non-compliance were more than sufficient to justify revocation of pretrial diversion because a defendant who will not cooperate with the conditions of her [or his] supervision may indeed constitute a significant risk to the community at large and be unmanageable in the community.").[10]

---

[10] We recognize that *Compise* was an appeal from revocation of pretrial diversion rather than a probation revocation. Nonetheless, we discussed how the same requirements set forth in KRS 439.3106 had to be found to revoke pretrial diversion. 597 S.W.3d. at 179-80. Ultimately, we reversed the revocation of Compise's pretrial diversion because the trial court failed to make a finding that Compise posed a **significant** risk to others. *See id* at 182. In contrast, the trial court here explicitly found that Saxton posed "a significant risk to the community at large" and could not be successfully managed in the community. (Revocation Order, pp. 1-2).

Moreover, though not explicitly mentioned in the trial court's written order or oral findings, Saxton's criminal history included recent convictions for a violent crime (strangulation) as well as for drug-related offenses. Given his serious criminal history and evidence of multiple probation violations occurring within a year of his release, ample evidence supports the trial court's findings that Saxton could not be successfully managed in the community and that he posed significant risks to the public. To the extent that we have identified evidence of reasons to support the finding of KRS 439.3106(1) requirements beyond those reasons specifically articulated by the trial court, appellate courts may properly affirm on independent grounds especially when supported by the record. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Tr. Co.*, 434 S.W.3d 489, 495-96 (Ky. 2014). *See also Andrews*, 448 S.W.3d at 776 n.3.

In sum, the trial court made the required KRS 439.3106(1) findings, and these findings are supported by the evidence.

Further arguments in the parties' briefs which are not discussed herein have been determined to lack merit or relevancy to our resolution of this appeal.

**CONCLUSION**

For the reasons stated herein, **WE AFFIRM**.

ALL CONCUR.

BRIEFS FOR APPELLANT:   BRIEF FOR APPELLEE:

Sarah D. Dailey     Russell Coleman
Frankfort, Kentucky    Attorney General of Kentucky

           Jenny L. Sanders
           Assistant Attorney General
           Frankfort, Kentucky